599 A.2d 861

**Paul William ANDERSON**

**v.**

**STATE of Maryland.**

**No. 483, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 30, 1991.

714

L. Michael Schaech (Russell J. White, on the brief), Towson, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County of Towson, on the brief), for appellee.

Argued before WILNER, C.J., and GARRITY and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Paul William Anderson was convicted at a bench trial in the Circuit Court for Baltimore County of four counts of unlawful distribution of lysergic acid diethylamide (LSD) under Md.Code Ann. Art. 27, § 286(a) (1957, 1987 Repl.Vol., 1991 Cum.Supp.), and one count of distribution of 1,000 dosage units of LSD under Art. 27, § 286(f) (1957, 1987 Repl.Vol., 1991 Cum.Supp.). He was sentenced to two years imprisonment on each count of unlawful distribution, and a mandatory five years imprisonment pursuant to § 286(f) for distribution of 1,000 dosage units, with all sentences to run concurrently. He has appealed, contending:

—Art. 27, § 286(f)(1)(v), which provides a minimum sentence for distribution of 1,000 dosage units of LSD, is unconstitutionally vague as to what constitutes a "dosage unit";

—the trial court erred in failing to merge the unlawful distribution convictions with the conviction for distributing 1,000 dosage units; and

—there was insufficient evidence to sustain his conviction under § 286(f) for distribution of 1,000 dosage units of LSD.

Over the course of several months, in four separate transactions, Anderson sold various quantities of LSD to Richard Lisko, an undercover Baltimore County Police detective. In total, Anderson sold the officer three-and-one-half small food coloring bottles of liquid containing LSD and 10–and–½ sheets of LSD-treated blotter paper containing 1,046 individual perforated squares. The final two sales, of two-and-one-half bottles and 10 sheets containing 996 squares, took place within a period of 90 days in November 1989 and January 1990. Anderson was then arrested.

At the outset of the trial, Anderson contested the constitutionality of Art. 27, § 286(f)(1)(v), specifically the term "dosage unit." Counsel thereafter deferred argument on the issue and raised a continuing objection to the use of the term.

The sole witness for the prosecution was Detective Lisko. In addition to Lisko's testimony concerning the purchases from Anderson, Lisko provided expert testimony concerning the quantity of LSD purchased and the chain of custody. In support of Lisko's qualification as an expert in drug identification, the prosecution offered testimony that Lisko had been employed by the Baltimore County Police Department for five-and-one-half years and that he had participated in courses conducted by the Baltimore City Police, Baltimore County Police Department, Maryland State Police, and the Drug Enforcement Administration. Lisko was questioned extensively at trial with respect to what would constitute a "dosage unit" of LSD.

At the close of all the evidence, the trial court held the issue of the constitutionality of § 286(f)(1)(v), *sub curia*, pending briefing by counsel. After extensive briefing and argument, the court held that the statute was not unconstitutionally vague and subsequently convicted Anderson. Anderson then brought this appeal.

We do not find Art. 27, § 286(f)(1)(v) constitutionally vague or infirm. We do, however, hold that Anderson's

convictions for two counts of distribution were lesser included offenses and, as such, should have merged into his five-year mandatory § 286(f)(1)(v) sentence. Thus, we will remand the case for resentencing. We explain.

## THE VAGUENESS CHALLENGE

Appellant first asserts that the trial court erred in failing to hold Art. 27, § 286(f)(1)(v), unconstitutionally vague. The touchstone in determining whether a statute is impermissibly vague is whether "persons of common intelligence need reasonably guess at its meaning." *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). A law is not vague simply because it requires conformity to an imprecise normative standard.

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

*Eanes v. State*, 318 Md. 436, 459, 569 A.2d 604, *cert. denied*, —— U.S. ——, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990), quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). In *Eanes*, 318 Md. at 460, 569 A.2d 604, the Court of Appeals stated:

"[A] statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning."

Section 286(f)(1)(v) is part of the "Drug Kingpin Act" of 1989.[1] The impetus for the bill, SB 400/HB 502, came from the Governor's office. Section 286(f)(1)(v) is part of "The

---

1. *See Williams v. State*, 89 Md.App. 685, 691, 599 A.2d 848 (1991), upholding another portion of the Act.

Distribution of Large Quantities Component." The Briefing Document that accompanied SB 400/HB 502 states, at p. 5:

> "This component recognizes that there needs to be some distinction made between the individual who handles a substantial volume of drugs as compared to the person who handles a minimal amount. It also attempts to give the courts guidance with regard to the severity of possessing a certain level of a controlled dangerous substance. To help law enforcement officers have an impact upon the volume drug dealer, this component does the following:
>
> —It distinguishes the volume drug dealer from the street corner dealer by establishing a mandatory minimum penalty of 5 years in jail for the possession of certain threshold quantities of a controlled dangerous substance. The substances identified in the legislation are the same as those currently included in the Drug Importation Statute."

Under the Maryland statute, the designated large quantity of LSD, which distinguishes the wholesale drug dealer from the individual consumer, is 1,000 dosage units. Section 286(f)(1)(v).

Appellant argues that the term "dosage unit" is vague in two specific ways. First, he argues that Detective Lisko gave contradictory testimony as to whether a dosage unit was a whole sheet of blotter paper or one of the 100 perforated squares into which each sheet is divided.

At trial, during direct examination, the colloquy between the State's Attorney and Lisko went as follows:

> "Q Well, in response, what do you mean by a dosage unit, if you could explain?
>
> "A A dosage unit is a sheet of blotter paper. Sometimes they have designs. The majority of the time they do have designs, anywhere from a unicorn to a picture of a planet, Mickey Mouse to smilely faces, a variety of

things, whoever the chemist, whatever he decides to stamp on the blotter paper.

"Q That's what blotter paper is?

"A Blotter paper in general. A dosage unit is blotter paper simply treated with liquid LSD. LSD is absorbed in the blotter paper. The paper is perforated into a hundred different squares. The section of paper is perforated so you have a hundred squares of a hundred dosage units. One square, about half the size of a postage stamp, is torn off, placed under the tongue, and allowed to dissolve, and the person is abusing LSD at that point."

Appellant claims that if Lisko, the expert, was not sure, the term must be vague. We do not conclude that Lisko was not sure; he made it clear that a sheet of blotter paper, treated with LSD and perforated into 100 squares constituted 100 dosage units.

Moreover, later during cross-examination of Lisko, the court asked for and received clarification of the meaning of "dosage unit."

"THE COURT: ... I want to know in this officer's training, knowledge and experience what he considers to be a dosage unit. He has referred to it several times in his testimony, even over objection. [Defense counsel's] objection to the reference was overruled. But I want to know what he considers to be a dosage unit.

* * * * * *

"[LISKO]: As I just stated, one square, one small stamp, if you will, of a blotter paper in paper form would be a dosage unit. If it were in liquid form, one drop placed on a sugar cube or other soluble substance would be a dosage unit. That's the method which I have been instructed. That's the method that's common on street level distribution as to the method that has been taught to me throughout my career.

"THE COURT: Okay. In other words, any amount of LSD, whether it is on blotter paper or in liquid form, could be a dosage unit? When you say one drop, a drop

could have—different drops could have different weights, could they not?

"[LISKO]: Depending on what you use for a dropper, yes, sir. On that point, eye droppers are common vehicles of distribution, in this case the food coloring bottle. Something that will produce a uniform drop each time is commonly used. The sifter tubes that are used in chemistry are used on occasion, much as if a straw, has the same process, where you dip the straw, put your finger over the end of it, and you are able to drop out a consistent amount each time is considered a dosage unit. So it would depend on the vehicle or the instrument that you use to perform the drop."

Lisko also testified at trial, that a "dosage unit" of LSD is one "hit." When he testified concerning his discussions with appellant during the last and largest purchase, Lisko referred to the 10 sheets he purchased from appellant as containing 996 "hits," or dosage units. Thus, Lisko's testimony established that a dosage unit was one "hit," or the amount and form of LSD that would be sold on the street for individual use by the consumer.

Appellant's second specific argument is that the term "dosage unit" is vague because the actual amount of pure LSD in each dose can vary. He argues that the level of punishment can only be validly calibrated according to the actual amount of pure LSD sold, and not according to any other measure, such as the number of dosage units or "hits."

For purposes of comparison, the federal statute, 21 U.S.C. § 841(b)(1)(A)(v) (1986), prescribes the mandatory punishment for distribution of one gram or more of any substance containing a detectable amount of LSD. This statute has consistently been interpreted to allow consideration of the weight of the blotter paper in determining whether the enhanced sentence applies. *Chapman v. United States*, 500 U.S. ——, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991).

In *Chapman,* the Supreme Court upheld the federal statute against a challenge that its enforcement leads to nonsensical results. Under the federal statute the weight of a "mixture or substance containing a detectable amount" of LSD is used when computing the sentence for a defendant convicted of distributing the drug. Chapman argued that, under the wording of the statute,

"a major wholesaler caught with 19,999 doses of pure LSD would not be subject to the 5–year mandatory minimum sentence, while a minor pusher with 200 doses on blotter paper, or even one dose on a sugar cube, would be subject to the mandatory minimum sentence."

*Chapman,* 500 U.S. at ——, 111 S.Ct. at 1923–24 (footnote omitted). The Supreme Court rejected this argument, however, stating that, based on a reading of the legislative history, Congress had clearly intended the dilutant, cutting agent, or carrier medium to be included in the weight of the drug for sentencing purposes.

LSD is a difficult drug to measure because the amount used to achieve a "high" is too small to quantify. The Supreme Court in *Chapman* discussed how the drug is prepared and sold. It said:

"According to the Sentencing Commission, the LSD in an average dose weighs 0.05 milligrams; there are therefore 20,000 pure doses in a gram. The pure dose is such an infinitesimal amount that it must be sold to retail customers in a 'carrier.' Pure LSD is dissolved in a solvent such as alcohol, and either the solution is sprayed on paper or gelatin, or paper is dipped in the solution. The solvent evaporates, leaving minute amounts of LSD trapped in the paper or gel. Then the paper or gel is cut into 'one-dose' squares and sold by the dose. Users either swallow the squares, lick them until the drug is released, or drop them into a beverage, thereby releasing the drug. Although gelatin and paper are light, they weigh much more than the LSD. The ten sheets of blotter paper carrying the 1,000 doses sold by petitioners weighed 5.7 grams; the LSD by itself weighed only about

50 milligrams, not even close to the one gram necessary to trigger the 5-year mandatory minimum of § 841(b)(1)(B)(v)."

*Chapman,* 500 U.S. at ——, 111 S.Ct. at 1923.

The Supreme Court then held that, because of the difficulty in quantifying LSD, it was rational for Congress to set penalties based on the chosen carrier or tool used to facilitate the distribution of the drug. In addition, the Court also held that Congress was "justified in seeking to avoid arguments about the accurate weight of pure drugs which might have been extracted from blotter paper had it chosen to calibrate sentences according to that weight." *Chapman,* 500 U.S. at ——, 111 S.Ct. at 1928. In *Chapman,* the Supreme Court validated a framework set up by Congress which targets the wholesale drug dealer. Maryland's approach, invoking a mandatory minimum sentence for sale of large numbers of doses of LSD, is even more "market-oriented" than the federal scheme. Indeed, it has been recognized by some federal judges that a statute drafted in terms of the number of doses involved would most directly reach the heart of the problem. In *United States v. Marshall,* 908 F.2d 1312, 1322 (7th Cir.1990), *aff'd sub nom. Chapman v. United States,* 500 U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), Judge Easterbrook, writing for the majority, stated:

"In the broad middle ground of retail and wholesale sales, in which (to judge from recent decisions) LSD almost always is sold in blotter paper, § 841 [the federal statute] and the [sentencing] guidelines work as they should: the more doses, the greater the weight, the greater the weight, the longer the sentence."

Judge Posner, in his dissent in *Marshall,* 908 F.2d at 1333, wrote:

"If the weight of the LSD is difficult to determine, the difficulty is easily overcome by basing punishment on the number of doses, which makes much more sense in any event."

Both Judge Easterbrook and Judge Posner give recognition to the fact that LSD is sold by the dose, thus making "a dose" or "dosage unit" a logical measurement against which punishment is calibrated.

 In the instant case, the thrust of appellant's argument is that "dosage unit," as used in § 286(f)(1)(v), is vague because there is no way to be certain exactly how much pure LSD constitutes one "dosage unit." Such mathematical precision in a penal statute, is not, however, required. *Bowers v. State*, 283 Md. 115, 129, 389 A.2d 341 (1978). As *Chapman* explains, the Legislature is free to vary punishment according to the quantity of drugs sold. This includes measuring the units in which the drugs are actually sold on the street.[2] As applied to illegal drug traffic and the facts of the case now before us, "dosage unit" is that amount which is sold for individual use at one time to achieve the desired effect. Appellant does not claim that "dosage unit" is vague when it is interpreted as it was in this case. When appellant made his final sale of the 10 sheets of blotter paper to Lisko, he told Lisko there were not 1,000 "hits," but only 996, because he had sold four hits previously during the day. Appellant knew how many "hits," or dosage units of LSD he was selling. Thus, the statute, as applied to the facts of this case, is not unconstitutionally vague.

## MERGER OF THE UNLAWFUL DISTRIBUTION CONVICTIONS

Appellant next contends that the trial court erred in failing to merge the unlawful distribution convictions with the Art. 27, § 286(f) conviction. He argues that the four

---

**2.** Appellant cites to the statutes of various other states to bolster his argument that the term "dosage unit" must be defined or be given a specific weight. Alabama, Arkansas, Delaware, Iowa, New Jersey and New York all use weight to quantify LSD in their statutes. Yet, measuring LSD by weight is also subject to criticism as *Chapman* illustrates. It is up to the Legislature, not the courts to determine what the appropriate measure under the statute should be.

unlawful distribution convictions should merge because they are "lesser included" offenses of § 286(f). Appellant is partially correct.

■ Under both federal and Maryland common law, the rule governing whether two offenses are the same for double jeopardy purposes is the "required evidence" test laid out by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Williams v. State*, 323 Md. 312, 316–17, 593 A.2d 671 (1991); *Snowden v. State*, 321 Md. 612, 616–17, 583 A.2d 1056 (1991); *Monoker v. State*, 321 Md. 214, 217 n. 2, 219, 582 A.2d 525 (1990); *Gianiny v. State*, 320 Md. 337, 342, 577 A.2d 795 (1990); *Middleton v. State*, 318 Md. 749, 757, 569 A.2d 1276 (1990). The test was most recently reiterated by the Court of Appeals in *Williams:*

"The required evidence is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy [and merger] purposes, even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy [and merger] purposes."

*Williams*, 323 Md. at 317–18, 593 A.2d 671, quoting *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240 (1976). Thus, the required evidence test "focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *Snowden*, 321 Md. at 617, 583 A.2d 1056, quoting *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465 (1986). If the offenses merge, then separate punishments would violate the double jeopardy prohibition. *Newton v. State*, 280 Md. 260, 268, 373 A.2d 262 (1977).

■ In the instant case, appellant was convicted of four counts of unlawful distribution of LSD under § 286(a) and one count of distribution of 1,000 dosage units of LSD under § 286(f). Section 286(a) provides in pertinent part:

"(a) Except as authorized by this subheading, it is unlawful for any person:

"(1) To manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance."

The charges against appellant stem from four separate transactions in which he sold LSD to Detective Lisko. The sales took place on October 18, 1989, October 21, 1989, November 2, 1989 and January 29, 1990. The aggregate sales that occurred on November 2, 1989 and January 29, 1990 were enough to place appellant under the coverage of § 286(f), which provides in part:

"(1) If a person violates subsection (a)(1) of this section and the violation involves any of the following controlled dangerous substances, in the amounts indicated, the person is subject to the penalties provided in paragraph (3) of this subsection upon conviction:

"(v) 1,000 dosage units of lysergic acid diethylamide or any mixture containing the equivalent of 1,000 dosage units of lysergic acid diethylamide;

"(2) For purposes of determining the quantity of a controlled dangerous substance under paragraph (1) of this subsection, the quantity of controlled dangerous substances involved in individual acts of manufacturing, distribution, dispensing, or possessing with intent to distribute may be aggregated if each aggregate act of manufacturing, distribution, dispensing, or possessing with the intent to distribute occurred within a period of 90 days."

Thus, under the statute, the two sales that appellant made to Lisko on November 2, 1989 and January 29, 1990 were within a 90-day period and together constituted over 1,000 dosage units. Appellant then qualified for the mandatory

punishment under Md.Code Ann. Art. 27, § 286(f)(3)(i), which states that "it is mandatory upon the court to impose no less than 5 years' imprisonment, and neither that term of imprisonment nor any part of it may be suspended."

Appellant was also charged separately under § 286(a) for the same November 2, 1989 and January 29, 1990 sales to Lisko. Under the "required evidence" or "same elements" test mandated by *Blockburger*, the two unlawful distribution charges under § 286(a) are lesser included offenses of, and must be merged into, appellant's conviction under § 286(f). When § 286(a) and § 286(f) are compared, the elements are identical, with the exception being the 1,000 dosage unit requirement under § 286(f). All of the elements of § 286(a) must be established to meet the requirements of § 286(f). Thus, § 286(a), in effect, becomes one of the elements of § 286(f) and the *Blockburger* test is met. In addition, the two sales occurred within the 90 day period specified in § 286(f). Therefore, we vacate the two sentences for unlawful distribution under § 286(a), which were based on the November 2, 1989 and January 29, 1990 sales of LSD.

■ Appellant's two other convictions for unlawful distribution were based on sales, which occurred on October 18 and 21, 1989, respectively. These two convictions do not merge with appellant's other convictions under a *Blockburger* analysis. The two sales are separate crimes. Where "two crimes [are] spawned from separate acts, *Blockburger* is not implicated." *Hawkins v. State,* 77 Md.App. 338, 349, 550 A.2d 416 (1988). Hawkins was convicted of possession with intent to distribute a controlled dangerous substance and distribution of the same substance. His convictions stemmed from observations made by a special narcotics unit of the Montgomery County Police Department. The officers had observed Hawkins sell a tin foil packet containing marijuana and PCP. Moments later as the officers attempted to arrest Hawkins, he discarded a plastic bag containing a quantity of drugs, which gave rise to an inference of an attempt to distribute. This Court held that the two of-

fenses did not merge for the purposes of sentencing, because Hawkins sale of the tin foil packet and the act of discarding another plastic bag containing a quantity of drugs were two separate crimes spawned from two separate acts. The same is true of the case now before us.

The sales of October 18 and October 21, 1989 were two distinct transactions. Appellant met with Lisko on both days with the express purpose of selling LSD. Appellant sold LSD to Lisko each time. Each one of these sales was a separate and complete transaction, thus there can be no merger. We therefore affirm the two judgments for unlawful distribution under § 286(a), which were based upon appellant's October 18 and 21, 1989 sales of LSD to Detective Lisko.

## SUFFICIENCY OF THE EVIDENCE

Finally, appellant contends that the State failed to present sufficient evidence in order to convict him of violating Art. 27, § 286(f). More specifically, he asserts that there was insufficient evidence that he distributed 1,000 dosage units. We disagree.

The well-established standard for determining whether there is sufficient evidence to sustain a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984), quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ At trial Lisko testified how appellant himself described the sale in January 1990 as involving 996 "hits." Thus, to sustain his conviction under § 286(f), it is only necessary to find evidence from which the trial court could have concluded that the sale in November of 1989 involved four or more dosage units. On November 2, 1989, appellant

sold to Lisko two-and-one-half bottles full of liquid containing LSD. Lisko testified that one of these bottles contained at least 53 drops of a mixture containing LSD. He also testified that liquid LSD, such as that sold to him by appellant, is marketed on the street by placing one drop on a sugar cube. The cube is then sold for approximately $5. Based on this testimony, the trial court could have reasonably found that the sale in November involved far more than four dosage units. Thus the November sale, combined with the January sale of 996 "hits," meets the 1,000 dosage unit requirement of § 286(f)(1)(v).

■ Appellant argues further that there was insufficient evidence that the substances sold to Lisko actually were LSD and that there was insufficient evidence to show how many of the 996 squares of blotter paper actually contained LSD. During appellant's trial, the State had admitted into evidence four exhibits, which were the laboratory reports of the analysis of the substances purchased by Lisko from appellant. These reports confirmed the fact that the materials appellant sold to Lisko contained LSD. In addition, Lisko's expert testimony as to how LSD on blotter paper is prepared for sale could have reasonably led to the inference that each square on a sheet of blotter paper was relatively uniform in terms of the presence of LSD.

The State was not required to prove its case through individual chemical analysis of every single one of the 996 dosage units appellant sold. The laboratory test results admitted into evidence proved the presence of LSD on each sheet of blotter paper and in each bottle of liquid. This evidence, combined with testimony relating to the process of preparation of LSD on blotter paper, and with appellant's own statement to the effect that he was selling Lisko 996 "hits," was sufficient to prove appellant sold Lisko at least 1,000 dosage units.

JUDGMENTS AFFIRMED AS TO THE GUILTY FINDINGS UNDER § 286(a) FOR THE OCTOBER 18, 1989 AND OCTOBER 21, 1989 TRANSACTIONS AND UNDER

§ 286(f) FOR THE NOVEMBER 2, 1989 AND JANUARY 29, 1990 TRANSACTIONS.

SENTENCE VACATED FOR CONVICTIONS UNDER § 286(a) FOR THE NOVEMBER 2, 1989 AND JANUARY 29, 1990 TRANSACTIONS.

COSTS TO BE PAID ⅔ BY APPELLANT AND ⅓ BY BALTIMORE COUNTY.