611 A.2d 1091

**STATE of Maryland**

v.

**Lauren Marie WADLOW.**

**No. 1535, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Sept. 4, 1992.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty., for Montgomery County, Rockville, on the brief), for appellant.

Reginald W. Bours, III and Donna M. Shea, Rockville, for appellee.

Argued before WILNER, C.J., and BISHOP and BLOOM, JJ.

BLOOM, Judge.

Lauren Marie Wadlow was indicted (First Count) for possession of cocaine "in sufficient quantity to reasonably indicate under all circumstances an intent to distribute" the same, "to wit: over 448 grams of cocaine, in violation of Article 27, section 286(a)(1) of the Annotated Code of Maryland" (possession with intent to distribute); (Second Count) for possession of cocaine, in violation of Article 27, section 287(a) of the Annotated Code of Maryland; (Third Count) conspiracy to distribute "a controlled dangerous substance, to wit: cocaine, in excess of 448 grams, in violation of the Common Law"; and (Fourth and Fifth Counts) for distribution of cocaine. A jury in the Circuit Court for Montgomery County convicted Ms. Wadlow on the first three counts; the Fourth and Fifth Counts were nolle prossed. On 9 October 1991, the court, merging the conviction on the Second Count into the conviction on the First Count, imposed consecutive prison sentences of four years on the First Count and one year on the Third Count but suspended the one year sentence in favor of a period of supervised probation to begin upon her release from prison.

The State, contending that the court had imposed an illegal sentence in that a minimum sentence of five years without parole was statutorily mandated, noted an appeal on 10 October 1991. After noting its appeal, the State filed a motion, on 15 October 1991, to correct the "illegal sentence." Ms. Wadlow noted a cross-appeal on 8 November 1991. On 18 November 1991, the court, accepting the State's assertion, or concession, that the imposition of a separate sentence on the Third Count (conspiracy charge) was illegal because the conviction on the Third Count necessarily merged into the conviction on the First Count, "corrected" the sentence(s) by striking out the one year sentence but imposing a five year sentence on the First Count. When the prosecuting attorney asked whether that sentence was imposed "pursuant to 286(f)" [Art. 27, § 286(f) of the Maryland Code (1957, 1992 Repl.Vol.) (which mandates a minimum sentence of five years imprisonment without pa-

role for distribution or possession with intent to distribute cocaine if the amount of cocaine involved is 448 grams or more), the trial judge responded, prophetically:

No, that is it. That is all I am saying. The Court of Special Appeals will wrestle with this one. Not too hard, but they will wrestle with it.

The issue raised by the State on its appeal, taken pursuant to § 12–302(c)(2) of the Courts and Judicial Proceedings Article of the Maryland Code (1989 Repl.Vol.), is whether the trial judge erred in failing to impose a penalty mandated by statute. In her cross-appeal, Ms. Wadlow contends:

1. That the trial court erred in denying her motion to suppress "because the search warrant was based upon stale and remote 'information' and upon an illegal search."

2. That she was denied a fair trial by the State's failure to provide adequate discovery and its suppression of fingerprint evidence, and by the admission of prejudicial testimony of Detective Mancuso.

3. That there was insufficient evidence either to connect her and the drugs seized from her co-defendant or to prove an agreement between the two of them to distribute CDS.

4. That the trial court erred in refusing her requested jury instruction.

I

We shall dispose of Ms. Wadlow's contentions prior to addressing the issue raised by the State. Before we reach any of those contentions, however, we must first deal with a challenge to this Court's jurisdiction.

Ms. Wadlow moved to dismiss the State's appeal as untimely, since it was from the sentence originally imposed and no appeal was taken by the State from the allegedly illegal sentence ultimately imposed. Ms. Wadlow's appeal was also filed before the court "corrected" the sentence it had initially imposed and she took no appeal after the court

resentenced her. The State moved to dismiss her appeal as untimely filed, while defending her motion to dismiss its appeal by relying on *Telak v. State*, 315 Md. 568, 556 A.2d 225 (1989). Ms. Wadlow, on the other hand, maintains that the State's appeal was premature because it was from a sentence that is no longer effective rather than from the sentence eventually imposed, whereas her appeal was from the convictions, which were not affected by the resentencing. They are both wrong. *Telak* is inapposite, and Ms. Wadlow's argument is based upon her misconception that an appeal in a criminal case is from a conviction.

In *Telak* the District Court struck out the guilty verdicts for driving while intoxicated and negligent driving and in lieu thereof imposed probation before judgment. No appeal was taken within 30 days of that disposition, instead, the State filed a "Motion to Correct an Illegal Sentence," asserting that the Court could not impose probation before judgment because Telak had previously been given probation for driving under the influence and Md.Code Ann., Art. 27, § 641(a)(2), prohibited placing a person on probation before judgment for a second or subsequent violation of driving while intoxicated or under the influence of alcohol. Md.Code Ann., Art. 27, § 641(a)(2) (1957, 1992 Repl.Vol.). The motion was denied, and the State appealed to the Circuit Court for Baltimore County—12 days after the District Court denied its motion but 68 days after the original imposition of probation before judgment. Telak's motion to dismiss the appeal was denied and the circuit court issued a "mandate" that the "State's Motion to Correct an Illegal Sentence be granted" and remanded the case to the District Court. The Court of Appeals granted Telak's petition for a writ of certiorari and reversed on the ground that the State's appeal to the circuit court was untimely. Under § 12–401(a) of the Courts and Judicial Proceedings Article of the Maryland Code, the State may appeal if it contends that the trial court "failed to impose the sentence specifically mandated by the Code." An appeal must be taken within 30 days after the date of the final

judgment appealed. The appeal was from the order granting probation, not the denial of the motion to correct the sentence; and the appeal from the allegedly illegal sentence was not taken within the time allowed for appeal.

 *Telak* does support the State's position that its appeal was timely when taken; it does not answer the question as to the effect of the appeal on the subsequent motion to correct the allegedly illegal sentence or the question as to the effect of the court's resentencing, pursuant to that motion, on the prior timely appeal. And Ms. Wadlow's attempt to distinguish the State's appeal of the sentence from her appeal of the convictions overlooks the fact that the right of appeal is from a final judgment and that in a criminal case the final judgment "consists of the verdict and, except where there is an acquittal, the sanction imposed, which is normally a fine or sentence of imprisonment or both." *Telak*, 315 Md. at 575, 556 A.2d 225. Ms. Wadlow's appeal, therefore, was from the convictions and sentences, not merely the convictions.

As a general rule, the perfecting of an appeal from a final judgment (as distinguished from an interlocutory order)

> brings the subject matter thereof within the exclusive jurisdiction of the appellate court and suspends the authority of the trial court over it during the pendency of the appeal; ... the trial court lacks jurisdiction to take any further action in the case with respect to the subject matter of, or affecting, the proceeding until the receipt of the mandate of the appellate court after the appeal has been heard and decided.

*Stewart v. State*, 282 Md. 557, 573, 386 A.2d 1206 (1978).

 This general rule does not, however, affect the right of a circuit court to modify, reduce, or strike out a sentence, upon a motion timely filed, even while the case is on appeal, Md. Rule 4–345(b), or to correct an illegal sentence at *any* time (which necessarily includes the time during which the case is on appeal). Md. Rule 4–345(a). If the appeal is from an allegedly illegal sentence—as is the

State's appeal in this case—correction of the sentence by the circuit court will render the appeal moot. If the appeal raises issues totally unrelated to any alleged illegality in the sentence—as does Ms. Wadlow's appeal in this case—correction of an illegal sentence will not affect the appeal. In this case, therefore, the change or modification of Ms. Wadlow's sentence did not nullify her appeal. And because the State contends that the change in Ms. Wadlow's sentence did not completely correct the alleged illegality, the modification of the sentence did not render the State's appeal moot.

## II

Wadlow contends that the trial court erred in denying her motion to suppress because the search warrant was based upon stale and remote "information," and upon an illegal search.

On 5 September 1990, the Montgomery County Police responded to a hotel employee's call that an unusual number of telephone calls were being made from and received by room number 831. That information led the police to set up a surveillance of the room and the parking lot of the Holiday Inn in Gaithersburg, Maryland. The room was registered to Bruce Todd, and there was never a change in the registration to reflect an additional guest for that room.

In the parking lot, Officer Robert Utter observed a white male leave the hotel room and remove a small suitcase from the cab of a 1986 Chevrolet pickup truck with Arkansas tag number RAR 723. The truck was later identified as being registered to Bruce M. Todd at an address in Little Rock, Arkansas. After Todd was identified as the individual who approached the truck earlier and removed the suitcase, a trained police dog was called in to inspect the vehicle for drugs.

Officer Donald Schubert of the Montgomery County K–9 Section testified that he responded to the Holiday Inn parking lot with his dog, which was trained in narcotics

detection, on 5 September 1990. Officer Schubert unhooked the dog from its leash and it walked around the perimeter of the truck without giving any positive reaction. The dog was then directed onto the bed of the truck and again gave no indication that it had found any contraband. Finally, the dog entered the cab of the truck through an open window. Officer Schubert looked into the rear window and observed the dog on the floor scratching underneath the passenger side seat, signifying that it had detected the scent of drugs. Upon Officer Schubert's command, the dog exited the truck through the window. All of the foregoing information, together with other information (much of which was several years old) contained in the Montgomery County Police Special Investigations Division's file on Bruce Todd, was the basis for an application for search warrants for both Room 831 at the Holiday Inn and Bruce Todd's truck.

Before the search warrants were issued, Todd and Ms. Wadlow left the hotel room and drove off in Todd's truck. At 10:52 p.m., Sergeant Fuhs decided to stop Todd's vehicle. The occupants were detained until the warrants were signed, which was at approximately 11:00 p.m. At that time the truck was searched and a black bag that contained more than one pound of cocaine was found in the rear of the truck, exactly where police had observed Todd place it. There was no evidence that either the bag or its contents were ever touched by Ms. Wadlow, and none of the items contained within the bag were ever shown to belong to her or to have any connection to her. Thereafter, the hotel room was also searched. Recovered from the hotel room were several items of drug paraphernalia and other evidence.

■ At the suppression hearing, Ms. Wadlow did not produce any evidence to the effect that she had any interest in the bag or its contents. Accordingly, the trial court held that Ms. Wadlow had no standing to object to the introduction into evidence of the bag and its contents as she had no interest or expectation of privacy in either. We agree.

The proponent of a motion to suppress has the burden of establishing that her Fourth Amendment rights have been violated by the challenged search and seizure. *Ricks v. State,* 312 Md. 11, 26, 537 A.2d 612, *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). "It is not sufficient to establish standing, where challenged, merely to show that one was on the premises where a search occurs." *Id.* Here, all of the evidence produced showed that Ms. Wadlow had no expectation of privacy in the truck; she was merely a passenger in a vehicle titled in Todd's name. Ms. Wadlow presented no argument at the suppression hearing or in her brief that she had any interest in the bag that contained a substantial quantity of cocaine. Ms. Wadlow has no Fourth Amendment standing to challenge the search and seizure in this case.

### III

Ms. Wadlow next contends that she was denied a fair trial by the State's failure to provide adequate discovery and its suppression of fingerprint evidence and by the admission of prejudicial testimony by Detective Mancuso.

Richard Gervasoni, Chief Chemist of the Montgomery County Police Crime Laboratory, testified at trial that he turned over "the plastic bags that contained the powder in this case so [Officer Ridgely] could use the bags or have the bags taken and tested for fingerprints and those bags were turned over to Officer Ridgely on September 24." It was not until the second day of trial, however, that defense counsel learned that fingerprint testing had been performed on the bag. Defense counsel was unable to locate a report on those fingerprints, and neither Officer Ridgely nor the Office of the State's Attorney had any knowledge of those results. Ms. Wadlow contends that, because that information was potentially exculpatory, withholding it from the defense was a violation of her constitutional due process rights.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). In order for the evidence to be "material," there must be a "reasonable probability" that Wadlow would have been found not guilty on some of the charges had the "suppressed" evidence been disclosed timely. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985).

The State's theory at trial was that Ms. Wadlow and Todd jointly and constructively possessed the cocaine; there was no contention or suggestion that Ms. Wadlow had personally handled the cocaine. Further, Ms. Wadlow was apprised at trial that the plastic "zip-lock" baggies in question had been submitted for fingerprint analysis and that none of Ms. Wadlow's prints had been identified thereon. She was clearly afforded ample time to present that information to the jury. Furthermore, any prejudice to Ms. Wadlow was overcome by the court's "missing evidence" instruction on the State's failure to produce fingerprint evidence.

Ms. Wadlow contends that the State proffered only limited anticipated "expert" testimony by Detective Mancuso, then was permitted to elicit extensive testimony that far exceeded the State's proffer, in violation of Maryland Rule 4–263.[1] Under that heading, Ms. Wadlow's brief sets forth several generalized complaints about Detective Mancuso's

---

1. Maryland Rule 4–263 states in relevant part:
 Discovery and inspection in circuit court shall be as follows:
 (b) **Disclosure Upon Request.**—Upon request of the defendant, the State's Attorney shall:

 . . . . .

 (4) Reports or Statements of Experts.—Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion.

testimony, but the only specific complaint that translates into an assertion of judicial error involves a certain light-colored piece of paper containing numbers (fractions) written in dark ink. Detective Mancuso, over objection, was permitted to state, based on his training and experience in drug cases, that the paper, which was found in Ms. Wadlow's wallet, was a "tally sheet" used in the drug trade to keep track of sales.

The Assistant State's Attorney had sent a one-page letter to defense counsel, informing counsel that Officer Mancuso would testify that: "Lauren Marie Wadlow and Bruce Michael Todd jointly possessed the cocaine found in the truck, on them and in the hotel room on September 5, 1990, indicating an intent to distribute." Ms. Wadlow complains that Mancuso's testimony concerning the "tally sheet" was overly prejudicial expert testimony on a matter that the defense was not apprised of as required by Rule 4–263.

Detective Mancuso was not testifying as an expert within the contemplation of Rule 4–263 in regard to the tally sheet, but was testifying as a non-expert allowed to express an opinion based on his special observations and expertise, his training and experience as a police officer who had been involved in undercover work dealing with drug traffickers. "Whether to allow such testimony lies within the sound discretion of the trial court." *Yeagy v. State*, 63 Md.App. 1, 22, 491 A.2d 1199 (1985). We find no abuse of discretion in allowing this non-expert opinion testimony. Even if Detective Mancuso's testimony were deemed to constitute "expert" opinion evidence, there would be no violation of Rule 4–263. Under § (b)(4) of the rule, the only disclosure that Ms. Wadlow was entitled to receive was any previously rendered oral or written reports by Mancuso to the State's Attorney, not the sum and substance of Mancuso's proposed trial testimony.

## IV

Ms. Wadlow contends that the evidence was insufficient either to connect her with the drugs seized from Todd or to

prove an agreement between the two of them to distribute cocaine.

The standard for our review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Barnhard v. State*, 86 Md. App. 518, 532 (1991), *aff'd*, 325 Md. 602, 602 A.2d 701 (1992), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *See also In re: Antoine H.,* 319 Md. 101, 107, 570 A.2d 1239 (1990). Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused. *Finke v. State*, 56 Md.App. 450, 468–78, 468 A.2d 353 (1982), *cert. denied*, 299 Md. 425, 474 A.2d 218 *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984). Although courts have repeatedly stated, usually by way of dictum, that "a conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances are inconsistent with any reasonable hypothesis of innocence," *see West v. State*, 312 Md. 197, 211–12, 539 A.2d 231 (1988) (emphasis in original), the meaning of that "rule" is obscure. What would constitute a conviction based on circumstantial evidence *alone*? One in which *every* element of the crime, including the *corpus delicti*, is proved by circumstantial evidence? One in which *any* element of the crime is established by circumstantial evidence? Or one in which the defendant's connection with the crime can only be shown through circumstantial evidence? And what constitutes a "reasonable" hypothesis of innocence? One that is merely plausible? Or one that is at least as probable as the hypothesis of guilt? Fortunately, it is a rare case indeed that would call for the application of such a rule. This is not one of them.

■ Although the substantial quantity of cocaine upon which Ms. Wadlow's convictions were based (667.6 grams—well over a pound—according to the State's chemist) was found in a suitcase that apparently belonged to Todd, the totality of the evidence supported a reasonable inference that Ms. Wadlow was in joint possession of it as a co-owner or one having a substantial financial interest in it. Ms. Wadlow was clearly closely associated with Todd. She certainly had some connection with cocaine; in her possession were found both a "tooter straw" (an implement for ingesting cocaine) and a "snow seal" (a folded paper used for packaging cocaine). Of far more telling significance was the piece of paper in her wallet that Detective Mancuso identified as a "tally sheet" for keeping track of drug sales. That, coupled with an unusual amount of cash in this credit card era—$1,013 in a knapsack that Ms. Wadlow was observed carrying—gives rise to a reasonable inference that Ms. Wadlow and Mr. Todd were partners in crime, joint possessors of the cocaine that was found in Todd's suitcase.

## V

Lastly, Ms. Wadlow contends that the trial court erred in its instructions to the jury, specifically with respect to instructions concerning: (1) joint possession; (2) elements of the indictment; and (3) the State's failure to produce fingerprint evidence.

"A litigant is entitled to have his or her theory of the case presented to the jury if that theory is a correct exposition of the law and if there is evidence in the case that supports the theory." *Myers v. Alessi,* 80 Md.App. 124, 130–31, 560 A.2d 59 *cert. denied,* 317 Md. 640, 566 A.2d 101 (1989). In promotion of that principle, Md. Rule 2–520(c) states in part, "[t]he court need not grant a requested instruction if the matter is fairly covered by instructions actually given." *See also State Roads Comm'n v. Parker,* 275 Md. 651, 688, 344 A.2d 109 (1975).

▮▮ All of these matters were fairly covered by the court's instructions. As to joint possession, the court instructed the jury as follows:

> In order to convict the Defendant of possession of cocaine, the State must prove that the defendant possessed the substance, that the substance was cocaine, and that the Defendant had knowledge of the presence of the substance.

> Possession means having control over a thing, whether actual or indirect. The Defendant does not have to be the only person in possession of the substance. More than one person may have possession of the same substance at the same time.

> A person not in actual possession, who knowingly has both the power and the intention to exercise control over a thing, either personally or through another person, has indirect possession.

> In determining whether Defendant had indirect possession of a substance, you ought to consider all of the surrounding circumstances.

▮▮▮▮ Ms. Wadlow's assertion that the jury was not adequately instructed on her theory that she might be guilty of certain things, but not the charges found in the three count indictment, must also fail. On this issue, the court instructed the jury:

> You are limited in your findings of guilt or innocence to the charges as described in these—in this indictment and should you perhaps feel that the Defendant is guilty of something else or something else may have happened that is not in evidence, you are certainly not to find the Defendant guilty of any of these charges. You are limited just to a consideration of the charges that you have before you.

Lastly, the court instructed the jury on the missing fingerprint evidence:

> In this case, evidence has been presented relative to fingerprint analysis undertaken by Montgomery County

Crime Lab. The party who has the availability of this witness has the burden of proving it and you may infer that that testimony, if not produced, would have been unfavorable to the party who did not call the relative witness.

We perceive no error, inaccuracy, or inadequacy in any of those instructions.

## VI

Count I of the indictment charged Ms. Wadlow with possessing cocaine in sufficient quantity to reasonably indicate under all circumstances an intent to distribute, to-wit, more than 448 grams. At the close of all the evidence, the jury was instructed generally on that count and the companion charges in Counts II and III, without mentioning the 448 grams or how that amount related to the charges. Since the jury was given the indictment, it was apprised of the 448–gram allegation, and during its deliberations it sent a question to the trial judge, asking whether 448 grams is the trigger amount for an automatic assumption of distribution. The court advised the jury that it must reach a verdict based upon the evidence and the previously delivered instructions. Ultimately, the jury found Ms. Wadlow guilty of Counts I, II, and III.

At the 9 October 1991 sentencing, the State requested that the court impose on the First Count (possession with intent to distribute) a five year term of incarceration pursuant to the "without parole" provision of Art. 27, § 286(f)(3)(ii). Ms. Wadlow objected, asserting that (a) whether she possessed the quantity of cocaine (448 grams) required by statute for the imposition of a five year mandatory term was an issue for the jury to decide, and the jury had not been called upon to make that determination; (b) the "without parole" clause no longer applied because a rehabilitation program referred to in the clause, *i.e.*, the Patuxent Institution, was no longer in existence; and (c) that Ms. Wadlow's co-defendant, Bruce Todd, had received a sentence that was, in effect, a lesser term than five years

without parole. The court subsequently imposed its four year and one year terms on Counts I and III without any reference to the "five years without parole" statutory provision.

At the hearing on its motion to correct the sentence, the State told the court that "the conspiracy under case law merges into the possession with intent because the amount—the cocaine that factually was the predicate for the convictions in the this case provoke the conspiracy and possession with intent with the same mass of cocaine that was involved in this case." Ms. Wadlow, of course, agreed with that concession; and the court accepted it, merged the conspiracy conviction into the possession with intent conviction, and changed the sentence on the latter conviction from four years to five years. We have doubts about the correctness of the State's position regarding merger, but since neither party's brief addresses the propriety of, explanation for, or logic behind the concession, the issue is not before us.

At the hearing on its motion to correct the allegedly illegal sentence, the State argued:

[STATE'S ATTORNEY]: As the court knows, the guidelines are three to seven years but there is a special circumstance in this case because of the amount of cocaine. Under 286(f)(1) and (f)(3) collectively read together, having committed the crime of possession with intent to distribute cocaine in an amount of 448 or over—in this case it was 667 grams—and/or a conspiracy which was count three, the Court has to sentence her to no less than five years, none of which can be suspended.

Defense counsel disagreed:

[DEFENSE COUNSEL]: I am not agreeing to the record and I am also not agreed that there has been a sufficient factual predicate found by the jury as to the quantity. There was certainly no findings of fact requested of them, no special verdict requested of them. Furthermore, for the record, if the State intends to rely

on 286(f)(1) and (3), I think I need to raise at this point the questionable validity of that sentencing scheme in light of the fact that it is tied in with Article 31(b) section 11 dealing with Patuxent Institution and the fact that that program could at any moment be completely eliminated.

Defense counsel then advised the trial court that the State had given adequate notice that it intended to proceed on the five year mandatory sentence, so notice was not an issue. Counsel argued that if, in fact, the trial court sentenced Ms. Wadlow pursuant to § 286(f), *i.e.*, at *least* five years, she should be given not more than five years because her co-defendant received 20 years with all but five suspended, so that she would be serving a longer sentence than the guilty party who was unquestionably in possession of the cocaine. The trial court and counsel then discussed the question that the jury had asked: "Does 448G [grams] trigger amount for automatic assumption for distribution?" The court had responded that there are no automatic assumptions and the jury must evaluate all the evidence. The jurors were *not* instructed that they had to make a finding as to the quantity in the first count. Defense counsel argued that since there was other cocaine (snow seals), it was unclear which cocaine was used to convict this defendant. The trial court then resentenced Ms. Wadlow to a term of five years incarceration on the fist count without mentioning that the sentence be served "without parole."

The issue before us is whether the trial judge was obligated to specify that the sentence was pursuant to § 286(f) and therefore to be served "without parole." There are threshold questions that need to be answered before this issue can be resolved. If a jury convicts a defendant of a violation of § 286(a) and there is evidence that the amount of the particular drug involved was sufficient to trigger the mandatory minimum sentence prescribed in § 286(f), must there be a specific finding by the jury as to the quantity involved in order for the "without parole" provision of § (f)(3)(ii) to be invoke? Or, if the evidence would support a

finding that the amount involved is sufficient to apply subsection (f)(3), must the trial judge make such a finding prior to sentencing?

### The Statute

Md.Ann.Code, Art. 27, § 286(f)(1) (1957, 1992 Repl.Vol.), provides that if a person violates subsection (a)(1), which prohibits the manufacture, distribution, or possession with intent to distribute certain controlled dangerous substances, and the violation involves specific amounts of such substances, that person is subject to the penalties in ¶ (3) of subsection (f): no less than five years imprisonment, no part of which may be suspended, and the person shall not be eligible for parole except in accordance with Art. 31B, § 11, of the Code (which deals with release from the Patuxent Institution, a provision that is of no significance to this case). The amount of cocaine that will trigger this enhanced penalty is 448 grams (approximately one pound) or more. The mandatory minimum penalty prescribed by this statute, enacted as part of the "Drug Kingpin" Act of 1989, is intended to distinguish the volume drug dealer from the street corner dealer.[2] Subsection (a)(1) defines the crime: It is unlawful for any person to possess a controlled dangerous substance (CDS) in sufficient quantity to indicate reasonably an intent to distribute a controlled dangerous substance. Subsection (f) provides a special penalty for the volume drug dealer who violates subsection (a)(1): five years imprisonment without parole.

So far as the crime itself is concerned, the quantity of the CDS "is not an end in itself; it is but evidence of intent. It is the intent itself that is critical." *Anaweck v. State,* 63 Md.App. 239, 255, 492 A.2d 658 *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985).

> Thus, even a large quantity of drugs might not yield a finding of intent to distribute, if other circumstances indicated large private consumption. Conversely, a much

---

2. *See Anderson v. State,* 89 Md.App. 712, 718, 599 A.2d 861 (1991).

smaller quantity might yield such finding of intent, if evidence other than the quantity possessed showed that intent.

*Id.*

 It is important to recognize that subsection (f) involves a *penalty* to be meted out to certain manufacturers, distributors, or possessors of controlled dangerous substances; the quantity manufactured, distributed, or possessed has nothing to do with guilt or innocence. Certainly one who possesses 447 grams of cocaine can be adjudged guilty of possession with intent to distribute under § 286(a)(1), but she cannot be *sentenced* pursuant to the provisions of subsection (f)(3). A conviction under § 286(a)(1) would not necessarily result in the enhanced penalty; only if that conviction involved an amount of a controlled dangerous substance specified in subsection (f)(1) is the five year sentence without parole mandated.

 Clearly, the imposition of a sentence pursuant to subsection (f)(1) requires a finding that a specific amount of the controlled dangerous substance in question was involved in the violation of subsection (a). But who must make this finding?

Since the specific amount of controlled dangerous substance that would mandate imposition of an enhanced sentence under § 286(f) (448 grams or more of cocaine; 50 pounds or more of marijuana; 50 grams or more of "crack" cocaine, etc.) affects only the sentence, it is not a factor to be decided by the jury in determining guilt or innocence. Necessarily, then, it is a factual issue to be determined by the sentencing judge. We perceive no difference, in that respect, between this enhanced penalty statute, based upon the quantity of controlled dangerous substance involved in criminal behavior, and other enhanced penalty statutes, such as Art. 27, § 643B, which imposes a mandatory minimum sentence of 25 years without parole upon recidivists after a third conviction of a crime of violence and one term of previous imprisonment and imposes life imprisonment

without parole for a conviction of a violent crime of one who has already served terms of imprisonment for three separate convictions of crimes of violence. It is for the sentencing judge, not the jury, to determine whether the State has proved, beyond a reasonable doubt, the factual predicate for the statutorily mandated enhanced penalty. *See* Md. Rule 4–245, setting forth the procedures for sentencing subsequent offenders. *See also Sullivan v. Sate,* 29 Md.App. 622, 349 A.2d 663 (1976) (involving enhanced penalty for second handgun offense under Art. 27, § 36B).

In *Temoney v. State,* 290 Md. 251, 429 A.2d 1018 (1980), reversing *State v. Temoney,* 45 Md.App. 569, 414 A.2d 240 (1980) (concerning the mandatory imposition of a sentence of life imprisonment without parole under Art. 27, § 643B), the Court of Appeals explained:

> If the State's position in the Court of Special Appeals were correct, namely that the evidence as a matter of law brought the defendant within the mandatory sentencing requirement of § 643B(c), then the case should have been remanded simply for the imposition of a mandatory sentence under that statute. (Citation omitted.) On the other hand, if the evidence were sufficient for a prima facie case under § 643B(c), but nevertheless conflicting or subject to conflicting inferences so that a trier of facts could reasonably go either way, then the case should be remanded for the trial court to make a factual determination and impose the appropriate sentence depending upon that factual determination. However, if the State's evidence were insufficient to permit a finding that the defendant came within § 643B(c), then the trial court's judgment was warranted (although on a different ground than relied on by the trial court) and should be affirmed. The question of the sufficiency of the evidence to establish a prima facie case is, of course, a question of law appropriate for resolution at the appellate level.

290 Md. at 261, 429 A.2d 1018.

Applying the directives of *Temoney v. State* to the facts of this case, we conclude that the evidence was

more than sufficient for a *prima facie* case under § 286(f). The chemist who analyzed the seized material testified that there were 667.6 grams of cocaine. There was no conflicting evidence; indeed, appellant did not challenge the chemist's testimony. Appellant argues before this Court, as she argued below, that the jury may have convicted her solely on the basis of the "snow seal," or folded paper packet containing cocaine, that was in her personal possession, rather than the large quantity of drugs that was in Mr. Todd's suitcase. But there was no testimony whatever as to the quantity of cocaine in the "snow seal," so it is illogical to infer that the jury may have found appellant guilty, on the basis of that folded packet, of possession of a controlled dangerous substance "in sufficient quantity to reasonably indicate an intent to distribute" the same. Nor are we persuaded by appellant's argument that the jury may not have believed she intended to *distribute* "that much" (448 or more grams) of the cocaine. How much of the 667.6 grams she intended to distribute and how much of it she intended to keep for her own use would be immaterial at either the trial stage or sentencing stage of the case. Under § 286(a), guilt is established if one possesses cocaine in any amount with the intention to distribute or dispense any part of it; and under § 286(f), the enhanced penalty is called for if one is convicted of possession of cocaine in the amount of 448 grams or more with intent to distribute any part of it because the violation of subsection (a) "involves" 448 grams or more.

We are convinced, therefore, that as a matter of law the evidence before the sentencing judge brought appellant within the mandatory sentencing requirements of Art. 27, § 286(f)(1) and (3). The jury obviously found appellant guilty of possession with intent to distribute on the basis of her joint possession of and control over 667.6 grams of cocaine; there is no other logical or reasonable interpretation of the verdict and the evidence supporting it. Furthermore, it seems fairly clear that the sentencing judge actually concluded that a five year sentence, pursuant to subsec-

tion (f) was mandated; there would have been no other permissible basis for him to have increased appellant's sentence under Count I from four years to five.

If a sentence of five years imprisonment must be imposed pursuant to § 286(f), merely imposing a sentence of that length without suspending any part of it will not satisfy the statute. Subsection (f)(3)(ii) specifies that the defendant "may not be eligible for parole except in accordance with Article 31B, § 11 of the Code." In order to comply with that requirement, we believe, it is necessary for the sentencing judge to state for the record, as requested by the prosecuting attorney in this case, that the sentence is imposed pursuant to § 286(f)(3). Otherwise, neither the prison authorities nor the parole board would be aware that the prisoner is not eligible for parole.

For the reasons set forth above, we affirm the conviction but vacate the sentence and remand for resentencing.

CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.

COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT, LAUREN MARIE WADLOW.