**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark Allyn TORY, Defendant–Appellant.**

**No. 93–50577.**

United States Court of Appeals,
Ninth Circuit.

Submitted August 3, 1994.*

Decided April 3, 1995.

---

* The panel unanimously finds this case appropri- ate for submission on the briefs and without oral

Yolanda M. Barrera, Los Angeles, CA, for defendant-appellant.

Brent A. Whittlesey, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

argument. Fed.R.App.P. 34(a) and 9th Cir. R. 34–4.

Before: BROWNING, FARRIS, and LEAVY, Circuit Judges.

Opinion by Judge LEAVY; dissent by Judge FARRIS.

## OPINION

LEAVY, Circuit Judge:

Mark Allyn Tory was indicted on five counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). Counts one and four charged armed robbery. Counts two, three, and five charged unarmed robbery. Tory admitted to having committed the robberies but denied being armed during any of them. The jury found Tory guilty of armed bank robbery as alleged in count one and unarmed bank robbery as alleged in counts two, three, and five. On count four, the jury found him guilty of the lesser offense of unarmed bank robbery. Tory argues that four rulings of the court denied him a fair trial on the issue of whether he was armed as charged in count one.

## FACTS

The evidence relative to count one was that on January 12, 1993, Tory entered the bank, walked directly to a teller station, and slid a piece of paper across the counter. On the paper, Tory had written "Give me all the cash in your top drawer or I will shoot you in the face." The teller gave Tory $2,020 cash, and Tory ran from the bank.

1) Before trial, the district court ruled that the government could not introduce evidence of a holster and gunbelt found in Tory's garage. However, the court said that the government could introduce that evidence if Tory "in some way denies that he ever owned a gun in any fashion." The government elicited testimony from FBI Agent Dick regard-ing a toy gun that he saw in Tory's home. A second FBI agent, Keven Kelly, was asked by Tory's attorney whether any gun had been found in the search of Tory's home.[1] After Kelly testified that no gun had been found, the court ruled that the door had been opened for evidence regarding the holster and gunbelt. The government later introduced the holster and gunbelt.

2) The teller, Ms. Scholle, on direct examination testified that Tory had raised his shirt to reveal the butt of a gun stuffed in the waist of his pants. Scholle testified on cross-examination, "I never recall him wearing jogging pants, no.... It was my memory that he had on like a white painter—white baggy-jean-like looking pants, like painter pants up here, white in color." She denied remembering that she had told Agent Dick that Tory was wearing sweatpants, but instead remembered telling him that Tory was wearing "a white type of pant."

Agent Dick had interviewed Scholle after the robbery. On cross-examination, Tory's attorney asked Agent Dick whether Scholle had told him that Tory was wearing sweatpants at the time of the robbery.[2] The government objected to the question as calling for hearsay, and the trial court sustained the objection. The court held that the statement to which Agent Dick would testify was not inconsistent with Scholle's testimony and, therefore, would not be admissible even for the limited purpose of impeachment.

3) During closing argument, Tory's attorney attempted to argue that if the defendant was wearing sweatpants it would be a reasonable inference that he could not have been carrying a gun because it would have fallen when he ran. The court ruled that there was no evidence as to that matter and prevented the argument.

4) The defense attempted to argue that if the prosecution had presented bank surveillance photographs in its possession, it would have cleared up the question of whether the

---

1. Defense counsel asked the following questions with the following responses:

    Q. Did you find a gun?
    A. No Ma'am.
    Q. Did you find a toy gun?
    A. No Ma'am.
    Q. Did you find a gun replica?
    A. No.
    RT 130.

2. Agent Dick's report states that Scholle had described Tory as wearing "a white sweat shirt with 'Hard Rock Cafe'; white sweat pants." ER at 8.

defendant was wearing sweatpants. The trial court again sustained the government's objection saying that there was no evidence of that fact.

## ANALYSIS

### I. Admission of Holster and Gunbelt

■ The trial court's finding that the defense opened the door to the introduction of evidence is reviewed for an abuse of discretion. *Cf. United States v. Segall,* 833 F.2d 144, 148 (9th Cir.1987); *United States v. Taylor,* 716 F.2d 701, 710 (9th Cir.1983). The issue is whether Tory asserted that he never owned a gun by asking Agent Kelly whether he had found a gun at Tory's residence.

Tory's examination of Agent Kelly did not amount to an assertion that Tory had never owned a gun. Tory's questions concerned solely what the government did or did not find in its search of his home. The defendant did not open the door and, therefore, admission of the evidence was an abuse of discretion. *United States v. Brooke,* 4 F.3d 1480, 1487 (9th Cir.1993).

### II. Impeachment of Ms. Scholle

■ Inconsistent statements are admissible under Fed.R.Evid. 613 for the purpose of impeaching a witness's testimony. *United States v. Monroe,* 943 F.2d 1007 (9th Cir. 1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). A trial judge, however, has discretion in deciding the preliminary issues of relevance and inconsistency. Fed.R.Evid. Rule 402 and *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975).

**3.** The dissent states that we hold the error in regard to the impeachment ruling alone requires a new trial. We do not. We hold that the *cumulative* effect of all the errors bearing on the issue of whether Tory had a gun requires a new trial on count one. We do not reach the question of whether this single error would require reversal.

The dissent also argues that our holding will force bank tellers to "now note with precision

Based on his interview report, Agent Dick would have testified that Ms. Scholle had told him that Tory was wearing sweatpants at the time of the robbery. Yet, Ms. Scholle, when explicitly asked whether she had described Tory's pants to Agent Dick as "sweatpants," stated that she did not remember describing them in that particular way but did remember describing them "as a white type of pant."

The trial judge's ruling that the statement was not inconsistent with Ms. Scholle's testimony was error. The statements in question are inconsistent and relevant to the ability of the sole prosecution eyewitness on the question of whether Tory had a gun and to her ability to recall pertinent details.[3]

### III. Closing Arguments About the Sweatpants

■ The court excluded the argument to the effect that a gun would have fallen from the sweatpants as the defendant ran from the bank stating, "There is no evidence of that, counsel. There is no evidence of that. You cannot argue that." RT at 175.

In excluding this argument, it is unclear whether the judge held that there was no evidence of the defendant wearing sweatpants, (Tory's position) or that he held there was no evidence that a person wearing sweatpants could not run carrying a gun in the waist of his pants, (the government's position). In fact, there was evidence that the defendant had been wearing sweatpants. The conclusion that he could not carry a gun in the waistband while running was a plausible inference that the defense should have been permitted to argue. We conclude that exclusion of the argument under either interpretation was error.

each article of the assailant's clothing" subject to reversible error for a failure of a trial judge to admit any inconsistencies in the witness's testimony. We disagree. We hold merely that it was an abuse of discretion for the trial judge to exclude relevant inconsistent statements offered for the purposes of impeachment. We apply no new rule of law.

### IV. Surveillance Photographs

■ When Tory's attorney attempted to argue that if the government had introduced surveillance photographs it would have clarified whether Tory was wearing sweatpants, the court stated: "Counsel, there is no evidence on that subject which you are arguing. Please do not do that." RT 176.

Again it is unclear exactly what the trial judge held was not in evidence. The judge might have believed there was no evidence as to the sweatpants. As noted, this would be erroneous. On the other hand, he might have believed there was no evidence of surveillance photographs. There was, however, the testimony of Ms. Denice A. Farrar, a bank officer who said she had seen the video of the January 12 robbery (count 1). She had on direct examination identified Tory as the person who robbed the same bank on February 3 (count 3) and February 26 (count 4). On cross-examination she gave the following testimony:

Q. There was a video of the January 12th robbery?

A. We have surveillance film and with what pictures we have on that, we were able to look and see what the camera captured.

Q. And have you seen those photographs?

A. On that day, yes.

Q. Of the January 12th robbery?

A. Uh-huh.

Q. How many pictures are there?

A. I don't know. I mean, it's a camera that spot checks the lobby. I couldn't tell you exactly how many there are.

Q. About five or ten, something like that?

A. No, fewer than that.

Q. Fewer than that?

A. Yes.

Q. About three pictures maybe?

A. Maybe.

Q. Do these pictures clearly show Mr. Tory in the bank on January the 12th?

MR. WHITTLESEY [Asst. U.S. Attorney]: I'm going to object on the grounds—

THE COURT: The objection is sustained.

MR. WHITTLESEY: —It's irrelevant. It's outside the scope of the direct examination.

MS. BARRERA: May I make a proffer, Your Honor?

THE COURT: No.

RT 73–74.

The ruling preventing the argument relative to the photographs was an abuse of discretion. The defense should have been allowed to argue that the government's failure to produce relevant evidence within its control gives rise to an inference that the evidence would be unfavorable to it. Cf. United States v. Cadet, 727 F.2d 1453, 1469 (9th Cir.1984); Dickinson v. United States, 203 F.2d 336, 343 (9th Cir.), rev'd on other grounds, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

### CONCLUSION

■ We find that the trial court erred in four rulings. We must determine whether they were more probable than not harmless, or whether the error did not have "substantial influence" over the verdict. See United States v. Rahm, 993 F.2d 1405, 1415 (9th Cir.1993) and United States v. Webbe, 755 F.2d 1387, 1389 (9th Cir.1985). We conclude that the cumulative effect of the errors deprived the defendant of a fair trial and requires a new trial on count one. See United States v. Green, 648 F.2d 587, 597 (9th Cir. 1981).

We find no merit in any of the remaining issues.

The judgment is VACATED and the case is REMANDED for a new trial on count one.

FARRIS, Circuit Judge, dissenting:

It is uncontroverted that on January 12, 1993, Tory entered the A. Levy bank and walked directly to the teller station where he slid a piece of yellow paper across the counter to Sandra Scholle. The demand note read: "Give me the money from your drawer or I will shoot you in the face." Ms. Scholle looked at Tory and she testified that he raised his shirt to reveal the butt of a bluish-

black handgun. Ms. Scholle gave Tory $2,020 dollars and he fled the bank.

Shortly after the robbery, Ms. Scholle told an FBI agent that Tory was wearing "white sweatpants." Her trial testimony was that he wore "white baggy jean-like looking pants, like painter pants." Tory sought to introduce evidence that Ms. Scholle had initially told the agent that Tory wore sweatpants. The district court did not permit the testimony. Tory argues that this evidence "was crucial because if [he] was wearing white jogging pants with elastic band, he could not have carried a heavy gun 'stuck in his waistband' as described by bank teller Sandra Scholle."

Trial court errors on nonconstitutional matters warrant reversal only if they more probably than not affected the outcome. *United States v. Rahm*, 993 F.2d 1405, 1415 (9th Cir.1993).

The district court may properly reject questioning about a tangential issue: the precise description of Tory's pants during the robbery. "[T]rial judges must retain a high degree of flexibility in deciding the exact point at which a prior statement is sufficiently inconsistent with a witness's trial testimony to permit its use in evidence." *United States v. Morgan*, 555 F.2d 238, 242 (1977).

According to the majority, Ms. Scholle's "discrepancy" in describing Tory's pants requires reversal. Tory argues that the jury might have concluded that sweatpants *always* have an elastic waistband and thus would not support a gun. Even if this is true, and it isn't, the credibility of the teller is the issue, not the type of pants. The trial court's decision to limit cross examination was within its broad discretion to admit or exclude evidence. *United States v. Larios*, 640 F.2d 938, 941 (9th Cir.1981). The court recognized, properly in my opinion, that the issue was tangential at best and likely of no consequence. Further, the pants that Tory claimed he wore were introduced into evidence without objection. The law, before the majority spoke, did not require that one looking at a pistol in support of a threat "to shoot you in the face" be absolutely precise in noting the kind of pants worn by the robber.

Ms. Scholle first saw Tory at a distance as he entered the bank. At that point, she had no reason to scrutinize his attire. By the time Tory was at her window, Ms. Scholle's view of his pants was largely, if not entirely, impeded by the counter. In addition, if Tory displayed a gun to support his threat, even one who was absolutely without fear would focus her attention on the gun, not his pants. Ms. Scholle testified that she was in shock during the robbery. Her "discrepancy" when describing Tory's pants was inconsequential.

If the majority's holding is a requirement of the law, bank tellers now have a daunting task during armed robberies. While complying with a gunman's demands, the teller must now note with precision each article of the assailant's clothing. General descriptions—even accurate ones—are not sufficient. Evidence of any inconsistency, no matter how slight, is no longer a question for the trial court's discretion; a refusal to allow such evidence is reversible error even where, as here, the only question is whether a gun was used. Identity is not at issue.

I agree with the majority that the district judge should not have interrupted defense counsel's closing argument on the sweatpants issue. Tory's counsel should have been permitted to argue that the sweatpants in evidence could not have supported a gun as Tory ran from the bank. The defect is that the pants introduced into evidence may or may not have been the pants Tory wore during the robbery. The question was properly one for the trier of fact.

The white sweatpants found in Tory's house during the police search were admitted into evidence without objection. Tory testified that he wore the sweatpants during the robbery. The jury was fully aware of Tory's theory of defense. By returning a guilty verdict on Count I, the jury necessarily rejected his argument that the sweatpants would not support a gun. I therefore conclude that the interruption was harmless error.

The majority holds that the district court erred in prohibiting defense counsel from asserting during closing argument that the government's failure to produce surveillance

photographs creates an inference that they would have shown Tory wearing sweatpants. Even if some would have permitted the argument, the court was within its discretion to preclude an argument that included speculation.

I would hold that the court's restriction of Tory's argument regarding the surveillance photographs was not error, but even if it were, it was harmless. Ms. Scholle unequivocally testified that Tory had a gun during the robbery. Tory's demand note stated that he would shoot if his orders were not obeyed. His wearing of sweatpants was not the pivotal issue.

As the case was tried, I'd agree with the majority that the admission of the holster and gunbelt was error. But if the argument is that sweatpants won't support a gun, then the holster and gunbelt found at Tory's house would be properly admitted.

Although not perfect, Tory's trial was fair. He was properly convicted. Record evidence supports the conviction. I would affirm.