741 A.2d 1119

Andre PATTERSON

v.

STATE of Maryland.

No. 16, Sept. Term, 1999.

Court of Appeals of Maryland.

Dec. 9, 1999.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (retired, specially assigned), JJ.

CATHELL, Judge.

Petitioner Andre Patterson was convicted by a jury in the Circuit Court for Montgomery County of possession of cocaine with intent to distribute and various driving offenses. He appealed to the Court of Special Appeals. That court affirmed petitioner's convictions in an unreported opinion holding that the evidence was legally sufficient to support a conviction for the possession of cocaine with intent to distribute, that the trial judge did not erroneously refuse to give a requested "missing evidence" instruction to the jury, and that the trial judge did not erroneously deny petitioner's motion to suppress physical evidence.

We granted a writ of certiorari to consider whether the trial court erred in refusing to give the "missing evidence" instruction. We also address petitioner's argument that he was denied due process of law as a result of that refusal. Because we shall hold that a party generally is not entitled to a missing evidence instruction, we shall affirm.

## I. Facts

At approximately 4:45 p.m. on April 16, 1996, Officer Brian Stone and Corporal Ronald Perry of the Montgomery County Police Department observed petitioner run a stop sign while driving a tan 1980 Buick Century bearing temporary District of Columbia vehicle tags. They stopped the vehicle and Corporal Perry ran a check on petitioner's District of Columbia driver's license. After finding the driver's license to be valid, he conducted a records check through the Maryland Motor Vehicle Administration and learned that petitioner's Maryland license had been revoked. The officers then placed petitioner under arrest and ordered him into the front passenger seat of the police cruiser.

Officer Stone sat in the driver's seat of the police car next to petitioner while Corporal Perry conducted an inventory search of the 1980 Buick Century. Both watched as Corporal Perry inspected the vehicle. The search produced a dirty jacket in the trunk of the car. In the jacket pocket was a plastic sandwich baggie, which contained thirty one-inch by one-inch clear Ziploc baggies, each of which individually contained a suspected rock of crack cocaine. At the moment Corporal Perry removed the baggie from the jacket pocket, Officer Stone heard petitioner exclaim, "Oh shit." The evidence was later analyzed by a chemist and confirmed to be a total of 4.93 grams of cocaine.

During the trial, instead of offering the jacket into evidence, the prosecution offered a photograph of the jacket showing it while it was in the trunk of petitioner's car. Cross-examination of both police officers revealed that the jacket was never held as evidence by the police, that the jacket was not the kind of evidence typically held as evidence by their agency, and

that neither officer was aware of the jacket's current whereabouts. Petitioner's theory of the case was that the jacket did not belong to him and he apparently wished to try on the jacket at trial to show it did not fit him. There was no evidence indicating that the State was aware of whether petitioner owned the jacket, that petitioner intended to assert that the jacket was not his, or that the jacket did not fit him. At the close of trial, petitioner requested that the court issue a "missing evidence" instruction allowing the jury to infer that, because the State could not produce the jacket, its admission into evidence would have been unfavorable to the State. The requested instruction read as follows:

> You have heard testimony that a piece of evidence in this case, a coat, was not produced at trial by the State. If a piece of evidence could have provided important information in this case and if the evidence was peculiarly within the power of the State to produce, but was not produced by the State and the absence of that evidence was not sufficiently accounted for or explained, then you may decide that the evidence would have been unfavorable to the State.

The trial court refused to deliver the instruction. The Court of Special Appeals affirmed, holding that the trial judge had wide discretion in making such decisions. We granted a writ of certiorari to address the following issue: "In a case where [petitioner] is charged with possession with intent to distribute cocaine found inside a jacket which the defense claims did not belong to [petitioner], and where the State has lost the jacket, did the trial court err in refusing to give a missing evidence instruction?"

## II. Discussion and Analysis

■ The law concerning failure to produce evidence is well-defined in Maryland. If the State fails to produce evidence that is reasonably available to it or fails to explain why it has not produced the evidence, a defendant is permitted to comment about the missing evidence in his or her closing argument to the jury. *Eley v. State*, 288 Md. 548, 555–56, 419 A.2d

384, 388 (1980); *Henderson v. State,* 51 Md.App. 152, 441 A.2d 1114 (1982). In *Eley,* the State failed to produce fingerprint evidence against Eley and relied solely on eyewitness testimony for establishing his identification. In closing argument, defense counsel sought to argue that the State's failure to utilize the more reliable fingerprint identification, and its failure to explain why it did not produce such evidence, gave rise to an inference that Eley's fingerprints were not at the scene of the crime and, thus, he was not there. The trial court refused to allow defense counsel the opportunity to make this argument and the Court of Special Appeals affirmed. This Court reversed stating, "[o]ne can reasonably draw some adverse inference from the use of an inferior method when a superior [one] was readily available." *Eley,* 288 Md. at 555, 419 A.2d at 388 (quoting *People v. Carter,* 73 Ill.App.3d 406, 410, 29 Ill.Dec. 631, 392 N.E.2d 188, 192 (1979) (second alteration in original)).

The Court of Special Appeals correctly summarized our holding in *Eley* when it said, "[t]he message sounded by *Eley* is clear: Possible relevant evidence not introduced, or its absence explained, may be used against the State." *Henderson,* 51 Md.App. at 153, 441 A.2d at 1115 (1982). The law of Maryland concerning nonproduction of evidence is well-established: An inference may be made against the State. Such inferences have been allowed to take the form of closing arguments.

### A. The "Missing Evidence" Jury Instruction

In Maryland, analysis of the denial of a request for a missing evidence instruction begins with the recognition that a trial judge has a duty, upon request in a criminal case, to instruct the jury *on the applicable law.* Maryland Rule 4–325(c) provides in pertinent part: "The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.... The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." This Court has interpreted Rule 4–325(c) as "requir[ing] the trial court to give a requested instruction under the following

circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given." *Ware v. State,* 348 Md. 19, 58, 702 A.2d 699, 718 (1997); *see also Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344, 1348 (1984).

Maryland Rule 4–325(c) imposes a requirement that instructions be given in respect to the applicable law in a case. It does not apply to factual matters or inferences of fact. Instructions as to facts and inferences of fact are normally not required. When a party fails to produce evidence, an inference may be made against it. Many inferences, however, may be drawn from a missing piece of evidence and "emphasis of one possible inference out of all the rest by a trial judge can be devastatingly influential upon a jury although unintentionally so." *Yuen v. State,* 43 Md.App. 109, 114, 403 A.2d 819, 823 (1979). As this Court has stated in the past in regard to missing witness instructions, when "the inference is communicated to the jury as part of the judge's binding jury instructions, [it] creat[es] the danger that the jury may give the inference undue weight. At the very least, a trial judge's jury instruction ... may have the effect of overemphasizing just one of the many proper inferences that a jury may draw." *Davis v. State,* 333 Md. 27, 52, 633 A.2d 867, 879 (1993).

Because most evidentiary inferences are questions of fact, not questions of law, missing evidence instructions can be distinguished from instructions on the elements of the crime that a defendant is charged with, instructions on the affirmative defenses that a defendant may utilize, and from evidentiary presumptions that the law recognizes but, without an instruction, a jury would not recognize. Elements, affirmative defenses and certain presumptions relate to the requirement that a party meet a burden of proof that is set by a legal standard. A trial judge must give such an instruction if the evidence generates the right to it because it sets the legal guidelines for the jury to act effectively as the trier of fact.

An evidentiary inference, such as a missing evidence or missing witness inference, however, is not based on a legal standard but on the individual facts from which inferences can be drawn and, in many instances, several inferences may be made from the same set of facts. A determination as to the presence of such inferences does not normally support a jury instruction. While supported instructions in respect to matters of law are required upon request, instructions as to evidentiary inferences normally are not.

While the nature of missing evidence instructions is an issue of first impression in this Court, the Court of Special Appeals has interpreted such instructions on several occasions. The Court of Special Appeals noted in *Bailey v. State,* 63 Md.App. 594, 611–12, 493 A.2d 396, 404, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985):

> No Maryland Court has ever held that a party is "entitled" to a missing evidence instruction, perhaps because, as we have noted in regard to "missing witness" instructions,
>
>> "The failure to grant an affirmative instruction does not remove the availability of the inference. As a consequence, whatever prejudice may usually come from not giving an advisory instruction is diminished, because the inferential thought process is still available. The prejudice is simply that such an inference is not given preferred instructional attention over any other inferences available from the testimony or absence of testimony. Possibly for that reason, judges hesitate to grant the missing witness instruction; they do not wish to emphasize one legitimate inference over all others which the jurors have been told are solely within their judgment." *Yuen v. State,* 43 Md.App. 109, 114, 403 A.2d 819[, 823] (1979).

Moreover, as McCormick has noted:

> "... a practice which gives a party a right to such instruction is undesirable. If made a matter of right it is hard to escape the development of elaborate rules of law defining the circumstances when the right exists. To make it a

matter of right has the advantage, it is true, of focusing past experience on the problem presented at the trial, but the cost here of complex rules far outweighs the gain." *McCormick on Evidence*, § 272 (2d Ed.1972).

In *Hall v. State*, 69 Md.App. 37, 516 A.2d 204 (1986), *cert. denied*, 308 Md. 382, 519 A.2d 1283 (1987), the police failed to retain custody of a box found at the burglary scene from which Hall's fingerprint was lifted.[1] Hall requested a missing evidence instruction allowing the jury to infer that, because the State "lost" the box, its admission into evidence would have been favorable to Hall. The trial court denied the instruction and the Court of Special Appeals affirmed:

> [Hall] was not precluded from introducing evidence or arguing that there was some reasonable explanation for the presence of the box with his fingerprint at the crime scene. The trial court's instruction adequately covered the possibility of such alternative explanations. Accordingly, we find no error in the trial judge's refusal to give the additional instruction requested by [Hall].

*Id.* at 55, 516 A.2d at 213.

Petitioner relies heavily on the Court of Special Appeals decision in *State v. Wadlow*, 93 Md.App. 260, 611 A.2d 1091 (1992), *rev'd on other grounds*, 335 Md. 122, 642 A.2d 213 (1994), arguing that, because that court allowed a missing evidence instruction to stand, such an instruction is the only appropriate remedy. In *Wadlow*, plastic bags of cocaine were seized by police and submitted for fingerprint analysis. At trial, the State could not locate the testing results. The trial court granted a missing evidence instruction. The Court of

---

1. "Officer Hammond, who lifted the latent print from the box, explained the failure to take custody of the item from which the print was lifted as in accord with departmental policy. He testified:

 Q. Officer, is it your practice to seize every item that you obtain a latent print from?

 A. No sir, with all the burglaries that we have in Montgomery County, its impossible. We have no place to store all the items."
*Id.* at 54 n. 7, 516 A.2d at 212–13 n. 7.

Special Appeals refused to reverse the trial court.[2] *Wadlow* did not hold that such an instruction is mandatory.

Similarly, petitioner relies on *State v. Werkheiser*, 299 Md. 529, 474 A.2d 898 (1984). This case is distinguishable because *Werkheiser* relied upon this Court's interpretation of Maryland Code (1977, 1983 Cum.Supp.), section 16–205.1(d)(1)(iii) of the Transportation Article, which places a mandatory duty on police officers to obtain a blood sample from people who are unconscious or otherwise incapable of refusing to take a chemical test for blood alcohol content.[3] Werkheiser was convicted of driving while intoxicated. He was involved in a single-car accident, which rendered him unconscious. He remained in this unconscious state after he was taken to a hospital for his injuries. Although the officer investigating the accident had reasonable grounds to believe Werkheiser was intoxicated, he did not order or request the hospital staff to test his blood alcohol content. Because the police officer breached his duty as defined by § 16–205.1(d), this Court said that "[i]n our view the appropriate remedy available to [Werkheiser] here would be to allow an inference that had the test been administered, the result thereof would have been favorable to him, to be weighed by the trier of fact along with all the other evidence presented, including the officer's reasons for not directing that the test be administered." *Id.* at 538, 474 A.2d at 903. Our holding in *Werkheiser* is limited to the facts of that case. This Court acknowledged that an inference may be an appropriate remedy under some circumstances, but

---

**2.** The missing evidence instruction given in that case read as follows: "In this case, evidence has been presented relative to fingerprint analysis undertaken by [the] Montgomery County Crime Lab. The party who has the availability of this witness has the burden of proving it and you may infer that that testimony, if not produced, would have been unfavorable to the party who did not call the relative witness." *Wadlow*, 93 Md.App. at 276–77, 611 A.2d at 1099.

**3.** *Werkheiser* did not involve a refusal to grant instructions. Werkheiser sought dismissal of his case because of the officer's failure to comply with a statute.

we did not mandate that such inferences be presented in the form of a missing evidence instruction.

These cases support the same general standard: When evidence is missing, apparently due to the act or omission of one of the parties, an inference that the evidence would have been unfavorable to that party may be appropriate. That is all that is required. This Court has never directly addressed the mandatory nature of a missing evidence instruction. We did say the following, however, in regards to the related "missing witness" inference:

> The missing witness inference may arise in one of two contexts. A party may request that a trial judge instruct the jury on the operation and availability of the inference where all the elements of the rule are present. *See Christensen v. State,* 274 Md. 133, 333 A.2d 45 (1975). Additionally, a party may wish to call the jury's attention to this inference directly during closing arguments. *See Bruce [v. State ],* 318 Md. [706,] 729–31, 569 A.2d [1254,] 1266–67 [ (1990) ]. As a matter of necessity, the requirements of the missing witness rule must be more rigidly applied where the inference is used in the former context. Where a party raises the missing witness rule during closing argument, its use is just that—an argument.

*Davis v. State,* 333 Md. 27, 52, 633 A.2d 867, 879 (1993). We now further refine the issue in the case *sub judice* by holding that, regardless of the evidence, a missing evidence instruction generally need not be given; the failure to give such an instruction is neither error nor an abuse of discretion.

In the case *sub judice,* the trial judge denied petitioner's request for a missing evidence instruction; however, he did allow defense counsel to call the jury's attention to this inference. The trial judge's response to defense counsel's request for a missing evidence instruction was as follows:

> Tell me the case. I do not know of any case either. I mean, I think you can argue that they should have produced the [jacket], but I do not know that you are entitled to an

instruction that says they are *entitled* to make some sort of negative inference from the failure to produce.

. . . .

Well, I hear your argument, and it is an interesting one. It is probably a creative one, but it is not persuasive to me, so I am not going to grant it. [Emphasis added.]

The record reflects that the trial judge understood the law surrounding missing evidence instructions and correctly asserted that petitioner could make the argument, but was not entitled to such an instruction. He was correct.

We note that although the trial judge denied petitioner's request for a missing evidence instruction, he did provide another instruction and allow defense counsel to call the jury's attention to the inference. The trial judge instructed the jury that in evaluating both the testimonial and physical evidence: "[y]ou may draw any reasonable inferences or conclusions from the evidence that you believe to be justified by common sense and your own experiences."

During closing argument defense counsel presented the following to the jury:

Ask yourself why the coat isn't here. The drugs are here. The coat is not here. Now I think when I asked the officer where the coat is, I do not think he gave an answer as to where the coat is or why it is not here. Your recollection may be better than mine, but I do not think he said why the coat is not here.

Evidence—the drugs are evidence. The coat would be evidence. And I asked him specifically, What is evidence, and would you agree with my definition, I said, [e]vidence would be any item which will be of use in a court proceeding to prove or disprove a fact under consideration.

Well, that is clearly what we have in this case. Who does the coat belong to? They have charged him with possession of drugs that are concealed in a coat. The question is clearly, Who does the coat belong to? Did this man know what was in this coat?

Clearly the coat is evidence, and there is no explanation for why it is not here today. And you can infer from the fact that the police—and you heard—let me back up.

You heard that there are policies and procedures as to logging in and logging out evidence because evidence is obviously very important. It is part of the officer's job. He collects evidence. He investigates, and he keeps that evidence secured and preserved so if it goes to trial, jurors like yourselves can take a look at that evidence.

And that is what was done with the drugs. Mr. [Perry] testified, and he was very good about that. He indicated that it is secured. It is brought in by an officer or technician. It is logged in.

Every time that it is logged in or out of that vault, they make notations of that to preserve it, to secure it. Why wasn't the coat secured? Where is it?

And I think you see in the paperwork here that the officer submitted, he wrote down on one of the forms miscellaneous property. He wrote down man's jacket and logged it. It was never logged out. What happened to it?

You can infer from the State's failure to produce this key piece of evidence in this case—you can make inferences, and you can infer that if a jacket or coat would be brought in here, that it would be unfavorable to the State. Perhaps if [petitioner] tried it on here today, it would not fit.

Petitioner called the jury's attention to an apparent inference against the State. When "[p]ossible relevant evidence [is] not introduced, or its absence explained, [it] may be used against the State." *Henderson*, 51 Md.App. at 153, 441 A.2d at 1115. Petitioner was able to: (a) present testimony that he was not seen wearing the jacket and that it was not his style; (b) question the police officer as to what happened to the jacket; and (c) argue to the jury to draw the adverse inference on their own based on the evidence in the case. Petitioner's ability to draw an inference against the State was thus satisfied.

While some other jurisdictions hold that the determination whether to grant a missing witness instruction is left to the sound discretion of the trial judge, the result in those cases is generally in accord with the result we reach in the case at bar. The Court of Appeals of Alaska has held that a defendant was not entitled to a missing evidence instruction. *Riney v. State,* 935 P.2d 828, 839–40 (Alaska Ct.App.1997). In that case, the defendant argued that an audiotape of a police interview with a codefendant, which the police lost, should be presumed to contain evidence favorable to the defendant. The trial court denied the defendant's request for an instruction stating: "[The tape] was lost; they don't know what happened to it. They looked for it, couldn't find it. They looked for it again[.] ... They kept looking for it; they couldn't find it. The DA's own file shows [that] they were after it[.] There does not appear to be any evidence whatsoever from which a reasonable inference could be drawn that someone deliberately went out and destroyed [the codefendant's] taped statement." *Id.* at 839 (first four alterations in original). The Court of Appeals of Alaska affirmed. *Id.* at 840.

The Delaware courts have reached similar conclusions:[4] "In evaluating a challenge to the trial judge's decision to deny instructing the jury about evidence that is missing because it was lost or not properly preserved, this Court examines the claim in the context of the entire record. Viewing this record in its entirety ... the trial judge was correct in declining the defense request for a missing evidence instruction." *Cook v. State,* 728 A.2d 1173, 1176–77 (Del.Super.Ct.1999) (citations omitted).

---

4. Delaware requires that trial judges employ a three-part test in determining whether to grant a requested missing evidence instruction. "In general terms, the court should consider '(1) the degree of negligence or bad faith involved, (2) the importance of the lost evidence, and (3) the sufficiency of the other evidence adduced at the trial to sustain the conviction.'" *Deberry v. State,* 457 A.2d 744, 752 (Del.Super.Ct.1983) (quoting *United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy, J., concurring) (quoting *United States v. Higginbotham,* 539 F.2d 17, 21 (9th Cir.1976))).

The United States Court of Appeals for the Ninth Circuit has held that a trial court has no obligation to grant missing evidence instructions. In *United States v. Artero*, 121 F.3d 1256 (9th Cir.1997), *cert. denied*, 522 U.S. 1133, 118 S.Ct. 1089, 140 L.Ed.2d 145 (1998), the defendant was convicted of smuggling marijuana across the Tijuana—San Diego border in the gas tank of his car. At trial, the government was unable to introduce the gas can that United States Customs had found in Artero's trunk because government personnel had lost the can.[5] Artero requested a missing evidence instruction, which was denied.

> Artero cites no authority for the proposition that the court was obligated to instruct the jury that it could draw inferences against the prosecution.... He cites *United States v. Tory*, 52 F.3d 207, 211 (9th Cir.1995), but all that held was that the "defense should have been allowed to argue" for an adverse inference. In the case at bar, the judge expressly provided that the defense counsel could argue for adverse inferences, which is all that *Tory* might require.

*Id.* at 1259.

Other courts throughout the country have similarly held that missing evidence instructions are not mandatory, although generally basing their decisions on an abuse of discretion standard. *See United States v. Rose*, 104 F.3d 1408, 1417 (1st Cir.) (holding there was no abuse of discretion by the trial judge in ruling that the failure to examine an ammunition clip found on defendant's person did not justify a missing evidence instruction), *cert. denied*, 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997); *Doe v. Johnson*, 52 F.3d 1448, 1460 (7th Cir.1995) (noting, under Illinois law, that "whether to use the missing witness/evidence instruction is within the sound discretion of the trial court."); *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir.1985) ("The refusal to give the negative inference instruction was within the sound discre-

---

**5.** Artero had modified his car's gas tank to carry drugs leaving little room for gasoline. He had a gas can full of gasoline in his trunk to use to top off the car's gas tank. It was this gas can that was lost.

tion of the trial court."); *United States v. Jennell,* 749 F.2d 1302, 1308–09 (9th Cir.1984) (holding that there was no abuse of discretion when the district court refused to give the defendant's missing evidence instruction), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985); *Hughes v. United States,* 633 A.2d 851, 852 (D.C.1993) (holding that the prosecution's failure to introduce evidence that defendant's fingerprints were on a ziplock bag of cocaine did not entitle defendant to a missing evidence instruction); *State v. Jordan,* 17 Wash.App. 542, 544, 564 P.2d 340, 341 (1977) ("The State's failure to produce the evidence was not unexplained and the evidence was equally available to Jordan. The [missing evidence] instruction was properly refused.").

The Supreme Court of Connecticut in *State v. Malave,* 250 Conn. 722, 737 A.2d 442 (1999), has gone so far as to abolish that state's required, common-law missing witness instruction, stating:

> For decades, this court ... has sanctioned a [missing witness] jury instruction that "... permits the inference that [a] witness, if called, would have exposed facts unfavorable to the party's cause." ...
>
> . . . .
>
> ... "[A]ny logical basis for the missing-witness inference [has been removed] by abolishing the practice of vouching. . . . Since neither party vouches for any witness's credibility, the failure of a party to call a witness cannot be treated as an evidentiary fact that permits any inference as to the content of the testimony of that witness." [ (quoting *State v. Brewer,* 505 A.2d 774, 776–77 (Me.1985)).]
>
> . . . .
>
> ... We conclude that such a result cannot be justified now because the missing witness "charge is no longer warranted in most situations, and in those few instances in which it might apply, a mandated judicial instruction over-emphasizes its usefulness to the jury. In the end it be-comes an adversarial game refereed by judges, a game which generates much heat, sheds little light, and consumes scarce judicial resources."

*Id.* at 728–29, 733, 739, 737 A.2d at 446, 449, 452 (third and fourth alterations in original).

We have never directly mandated the giving of a missing evidence instruction, although we have, in the past, upheld a trial court's actions in regard to such an instruction. As we have indicated, trial judges, in proper circumstances, must instruct the jury on the applicable *law.* Generally, they need not instruct, even when requested or when facts might support the inference, on the presence or absence of most evidentiary inferences, including "missing evidence" inferences. To the extent that the opinions of the Court of Special Appeals are inconsistent with the holding of the case *sub judice,* they are overruled. To the extent our prior opinions in this area might be subject to different interpretations, they are herewith clarified. The trial judge did not err or abuse his discretion in declining to give the instruction. He was not required to so instruct the jury.

### B. Due Process Claim

■ The United States Supreme Court's interpretation of the Due Process Clause of the Fourteenth Amendment generally may be applicable in interpreting Article 24 of the Maryland Declaration of Rights. *Maryland Dep't of Human Resources v. Bo Peep Day Nursery,* 317 Md. 573, 602 n. 7, 565 A.2d 1015, 1029 n. 7 (1989), *cert. denied,* 494 U.S. 1067, 110 S.Ct. 1784, 108 L.Ed.2d 786 (1990). We have considered guarantees in the Declaration of Rights to be in *pari materia* with similar provisions of the federal constitution. Thus, we apply the same standards whether the claim alleges violation of a state or federal constitutional right. *Ogrinz v. James,* 309 Md. 381, 394 n. 3, 524 A.2d 77, 84 n. 3 (1987).

■ Petitioner contends that the trial court's refusal to give the missing evidence instruction denied him due process of law. The Supreme Court made clear in *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988),[6] that

---

6. *See also California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984) ("Whatever duty the Constitution

when a defendant alleges a denial of due process he or she must prove that the government acted in bad faith:

The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in [*California v. Trombetta*, 467 U.S. 479, 486, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)], that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal

imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (citation omitted) (footnote omitted)).

defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.* at 57–58, 109 S.Ct. at 337, 102 L.Ed.2d 281. The *Young-blood* standard logically must extend to the refusal to instruct on the government's failure to preserve evidence.

■■■ Petitioner relies on *Larsen v. Romeo,* 254 Md. 220, 228, 255 A.2d 387, 391 (1969), in which this Court stated that "[a]s a general rule, an inference arises from the suppression or destruction of evidence by a litigant that such evidence would be unfavorable to his case." Petitioner also notes *DiLeo v. Nugent,* 88 Md.App. 59, 71, 592 A.2d 1126, 1132 (1991), *appeal dismissed,* 327 Md. 627, 612 A.2d 257 (1992), in which the Court of Special Appeals said that

[t]he inference depends . . . upon the intent or motive of the party who is responsible for the destruction. Unexplained and intentional destruction of evidence by a litigant gives rise to an inference that the evidence would have been unfavorable, but would not in itself amount to substantive proof that the evidence was unfavorable.

Both *Larsen* and *DiLeo* were cases in which one party destroyed potential evidence. Nonproduction of evidence does not automatically equate with destruction of evidence. Petitioner offers no evidence that the police purposely suppressed or destroyed the jacket. The record reveals that the police accurately reported the existence of the jacket during the inventory search of the vehicle. While the defendant may have considered the jacket to be relevant evidence, there is little evidence that the police considered it to be evidence, and ever held it as evidence. *Larsen* and *DiLeo* point to intent or motive behind the destruction as essential to the drawing of the inference. Therefore, those cases do not aid petitioner because, not only is there no evidence that the police destroyed the jacket, petitioner has not established what the police motive or intent behind destroying the jacket would be.

Petitioner cites a number of out-of-state cases that state that an adverse inference instruction is required as a matter of

due process when the state has negligently lost or destroyed evidence. *See State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (Ariz.1964); *Lolly v. State*, 611 A.2d 956 (Del.Super.Ct.1992); *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995). These cases are inapposite because those state courts' evaluation of due process claims based on missing evidence were decided on individual state constitutional grounds rather than the federal due process standard established by *Youngblood*. *See Willits*, 96 Ariz. at 188, 393 P.2d at 277 (decided prior to *Youngblood* and basing its decision on the Arizona Constitution); *Lolly*, 611 A.2d at 959–60 (requiring a missing evidence instruction under the Delaware Constitution); *Osakalumi*, 194 W.Va. at 765, 461 S.E.2d at 511 ("Disposition of appellant's federal due process rights, under *Arizona v. Youngblood*, does not necessarily resolve his right of due process under [the] *West Virginia Constitution*."). As stated, *supra*, in Maryland we generally apply the same standards whether the claim alleges violation of a state or federal constitutional right.

■■■ Even if the failure of the police to seize and retain the jacket as possible exculpatory evidence could be described as negligence, negligence alone is not enough to meet the requirements of *Youngblood*'s bad faith standard. Here, there is no suggestion of bad faith on the part of the police. The officer testified that he dealt with the jacket according to standard police procedure. There was no evidence to the contrary.

At least one other jurisdiction has adopted the same view. In *State v. Vanover*, 721 A.2d 430 (R.I.1998), defense counsel requested that a missing evidence instruction, concerning photographs of the defendant's mouth, be read to the jury. The trial judge listened to defense counsel's argument and denied the request:[7] "although the defense attorney here would be

---

**7.** The denied instruction read as follows: "If you find that the police have lost or destroyed, caused to be destroyed, or allowed to be destroyed evidence whose contents are in issue, you may infer that the true fact is against the interest of the police." *Vanover*, 721 A.2d at 433.

allowed to argue to the jury the various inferences that could be drawn from the loss, 'if there's to be a case where a missing evidence instruction is to be given, I don't think this is the one.' " *Id.* at 433. The court concluded by stating, "a lost evidence instruction is not required each time potentially exculpatory evidence has been lost." *Id.* at 434.

Other states have adopted the bad faith test developed in *Youngblood.* *See People v. Cooper,* 53 Cal.3d 771, 810–12, 281 Cal.Rptr. 90, 809 P.2d 865, 885–86 (1991) (noting that the trial court is not required to instruct the jury that it could draw an adverse inference against the prosecution if it found that the state had destroyed or lost evidence and there is no due process violation), *cert. denied,* 502 U.S. 1016, 112 S.Ct. 664, 116 L.Ed.2d 755 (1991); *State v. Dulaney,* 493 N.W.2d 787, 793 (Iowa 1992) (when the destruction of a blood sample used in the defendant's drunk driving case was the result of routine procedure, as opposed to an intentional effort to deprive, there is no denial of due process); *State v. Hulbert,* 481 N.W.2d 329, 334 (Iowa 1992) (when a sheriff's deputy accidently erased a videotaped interview between the victim and an investigator, failure to give a spoliation inference instruction was not reversible error); *State v. Ortiz,* 119 Wash.2d 294, 301–05, 831 P.2d 1060, 1064–66 (1992) (noting that when semen samples sent in the mail, per routine procedure, thawed before they reached the FBI, nothing in the facts of the case indicated bad faith and, thus, there was no violation of due process).

 There is a common thread running through all of these cases of our sister states: intent or motive behind the destruction of the potential evidence is generally a determinative factor in assessing whether there has been a violation of defendant's rights under the Due Process Clause. Petitioner makes no claim of bad faith and has not offered any proof that would support such a claim. When asked why the jacket had not been brought to court, Corporal Perry testified that he did not consider the jacket to be evidence and that he did not know the whereabouts of the jacket. Additionally, he stated that it was not his police agency's procedure to hold such an

item as evidence: "No. We do not seize the coat. If we arrest somebody, and they have marijuana in their pants pocket we do not take their pants from them and keep their pants. Okay. I am just explaining that we do not keep items of clothes like that." Petitioner does not counter this evidence with any proof that the officers destroyed, lost or even seized the jacket.

Petitioner failed to present any evidence that the police acted in any way other than good faith concerning the matter of the jacket. There is little evidence that the police seized the jacket; there is no evidence that they intentionally destroyed the jacket. We hold that there was no violation of petitioner's due process rights.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**