T.C. Memo. 2001-297


UNITED STATES TAX COURT


RESIDENTIAL MANAGEMENT SERVICES TRUST,
ROBERT HOGUE, TRUSTEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MICHAEL T. AND LEONE R. CAREY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10400-99, 10502-99.        Filed November 7, 2001.


        R attributed to H and W gross receipts and
interest with respect to a trust, on the grounds that
the trust was either a sham or a grantor trust, or on
the ground that the assignment of income doctrine
applies.  R also claims that H and W failed to report
certain nontrust items of income and overstated certain
deductions.  R determined a sec. 6662(a), I.R.C.,
accuracy-related penalty against H and W.  R determined
that the trust understated income, overstated
deductions, and is liable for an accuracy-related
penalty, but R has orally moved to dismiss for lack of
jurisdiction with respect to the trust on the ground
that no proper person has petitioned the Court on
behalf of the trust.  Ps claim that R bears the burden
of proof.

1.  <u>Held</u>:  Trust income is attributed to H and W for the reasons stated by R.

2.  <u>Held</u>, <u>further</u>, H and W omitted nontrust income and overstated deductions.

3.  <u>Held</u>, <u>further</u>, H and W are liable for the accuracy-related penalty under sec. 6662(a), I.R.C.

4.  <u>Held</u>, <u>further</u>, R's motion to dismiss for lack of jurisdiction will be granted.

5.  <u>Held</u>, <u>further</u>, Ps bear the burden of proof.

Robert Hogue, pro se in docket No. 10400-99.

Michael T. Carey, pro se in docket No. 10502-99.

<u>Jeremy L. McPherson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  These consolidated cases involve determinations by respondent of deficiencies in, and penalties with respect to, the Federal income tax liabilities of the following taxpayers, for the 1995 taxable (calendar) year of each, in the following amounts:

| Taxpayer(s) | Deficiency | Penalty Sec. 6662(a) |
|---|---|---|
| Res. Mgmt. Svcs. Tr. | $65,834 | $13,167 |
| Michael & Leone Carey | 272,707 | 54,541 |

These cases are related in that, under various theories, respondent believes that there is an identity between Residential Management Services Trust (the trust) and Michael and Leone Carey (the Careys or, individually, Michael or Leone).  Among other

adjustments, respondent would attribute the income of the trust to Michael.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Issues for Decision

The principal issues we must decide are as follows:

Whether we have jurisdiction to redetermine the deficiency and penalty determined by respondent with respect to the trust; if so, whether the trust omitted from its return certain gross receipts and interest and overstated certain expenses; if so, whether the trust is subject to an accuracy-related penalty under section 6662; whether the Careys (1) omitted from their return gross receipts and interest reported by the trust and certain business receipts and (2) overstated certain deductions; whether the Careys are liable for self-employment tax for 1995 allocable to Michael (and are entitled to a related deduction) on account of omitted earnings from self-employment;[1] whether the exemption and earned income credit claimed by the Careys must be

---

[1] The amount of the Careys' liability for self-employment tax and the amount of the deduction under sec. 164(f) to which they are entitled are computational matters, the resolution of which will depend upon our disposition of other issues. Since the Careys have challenged that liability and deduction only on computational grounds, we shall not further discuss those items.

reduced on account of any increase in their adjusted gross income;[2] and whether the Careys are subject to an accuracy-related penalty under section 6662.

FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts filed by the parties, along with accompanying exhibits, is incorporated herein by this reference.

Residence; Principal Place of Business

On the date the trust filed its petition in this case, its principal place of business was in Redding, California. On the date the Careys filed their petition in this case, their residence was in Bella Vista, California.

Michael Carey

Michael is a licensed occupational therapist. During 1995, Michael was the proprietor of two residential care facilities for developmentally disabled adults. Those two facilities were called Sunshine Residential Program (Sunshine) and Rancho Residential Program (Rancho). In addition, during at least the first 11 months of 1995, Michael was obligated by contract to provide his services as a licensed occupational therapist to the trust. That contract required Michael to provide various services to the trust as needed, at $35 an hour. By check dated

_____

[2] This also is a computational matter, and, for the same reasons set forth supra note 1, we shall not further discuss it.

September 18, 1995, Michael transferred $8,000 from one of his proprietorship's bank accounts to the trust's bank account. Michael, as the proprietor of Rancho, used equipment under lease to the trust.

Carey 1995 Return

For 1995, the Careys made a joint return of Federal income tax on Form 1040, U.S. Individual Income Tax Return (the Carey 1995 return). That return shows the Careys' address as 3041 Lawrence Rd, Redding, California. Attached to the Carey 1995 return is a Schedule C, Profit or Loss From Business (Sole Proprietorship) (the Carey Schedule C). The Carey Schedule C reports Michael's income and expenses with respect to Sunshine and Rancho. The income and expenses are reported under the cash receipts and disbursements method of accounting. The Carey Schedule C reports gross receipts, expenses, and net profits from the operation of Sunshine and Rancho as follows:

| | | |
|---|---|---|
| Gross receipts | | $524,734 |
| Expenses: | | |
| Car/truck expense | $15,366 | |
| Depreciation | 31,029 | |
| Employee benefits | 220 | |
| Mortgage interest | 9,200 | |
| Other interest | 210 | |
| Legal/prof. services | 5,342 | |
| Property rental | 27,814 | |
| Supplies | 6,092 | |
| Taxes/licenses | 18,910 | |
| Travel expense | 228 | |
| Meals (50%) | 1,278 | |
| Utilities | 8,790 | |
| Wages | 204,621 | |

Other expenses:
   Administrative fees          41,006
   Consultation fees           26,886
   Food                        38,753
   Laundry                      4,129
   Medical services             2,417
   Maintenance/operations      59,855
   Phone                          890
 Business use of home           5,036
   Total                                          $508,072

   Net profit                                     $16,662

The Carey 1995 return shows a net operating loss carryover of $11,311. The return does not identify any income as having been received from the trust.

Trust Declaration

The trust was created by a declaration of trust (the trust declaration) dated May 24, 1994. In pertinent part, the trust declaration provides as follows:

[Begin cover page]

* * * * *

THIS DOCUMENT IS CREATED UNDER COMMON LAW
RIGHT OF CONTRACT IN WASHINGTON D.C.

RESIDENTIAL MANAGEMENT SERVICES

A Trust Organization and/or Pure Trust executed Under
The Constitutional Laws of the United States of America

* * * * *

[End cover page]

DECLARATION OF IRREVOCABLE TRUST

This Declaration of Irrevocable Trust is created this 24TH DAY OF MAY 1994, between CONTRACT ADMINISTRATORS TRUST, of Washington, D.C., hereinafter called the SETTLOR and AMERICAN COMMON TRUST, Washington D.C., with mailing address of Tempe, Arizona, Douglas J. Carpa, Trust Officer, hereinafter called the TRUSTEE, who are legal entities holding full title, not as individuals, but collectively as the Board under the name of RESIDENTIAL MANAGEMENT SERVICES and to collectively act as herein set forth and according to the inalienable Common Law rights afforded to men.  The wisdom, truth and good faith of this was demonstrated when the Congress of the United States Passed Public Law 97-280 declaring 1983 as the year of the Bible and for all persons to live by spiritual principles no matter what label one attaches to his faith in God.

FIRST

The SETTLOR hereby irrevocable [sic] assigns, conveys and gives to the Trustee, in trust, the following property:

Cash:  $100.00;

SECOND

The Trustee shall open and maintain such bank accounts as necessary to receive and hold said financial property, together with any additions thereto in trust for the use and benefit of the Trust Certificate Holders.  Certificate 001 for 100 Trust Certificate Units issues as indicated below:

SHASTA ENTERPRISES        TRUST CERTIFICATE UNITS  100

*    *    *    *    *    *    *

FOURTH

This agreement and trust created hereby shall be administered, managed, governed and regulated in all respects according to the applicable statutes of the Uniform Trustees' Powers Act and The Constitution of

the United States.  This trust shall be domiciled in the City of Washington, District of Columbia.  This Trust Organization shall enjoy the benefits of the Uniform Commercial Code adopted by the City of Washington, District of Columbia in the following citations:  Sec. 28:1-105, TERRITORIAL APPLICATION OF THIS SUBTITLE; PARTIES' POWER TO CHOOSE APPLICABLE LAW, and section 28:1-207, PERFORMANCE OR ACCEPTANCE UNDER RESERVATION OF RIGHTS.

\*     \*     \*     \*     \*     \*     \*

### SIXTH

No bond for the faithful performance of duties shall be required of any * * * Trust Manager under this agreement.

\*     \*     \*     \*     \*     \*     \*

### EIGHTH

No * * * Trust Manager * * * created by this agreement shall at anytime [sic] be held liable for any action or default of any * * * Trust Manager * * * unless caused by the individual(s) own gross negligence or by commission of a willful act of breach of trust.  A Successor-Trustee may be appointed by a court of competent jurisdiction or by consensus with the Trust Managers and Beneficiaries if the First Trustee resigns with 30 days notice.

\*     \*     \*     \*     \*     \*     \*

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year above written.

| /s/ | /s/ |
|---|---|
| CONTRACT ADMINISTRATORS TRUST, SETTLOR, Enrique Almodovar | AMERICAN COMMON TRUST FIRST TRUSTEE, Douglas J. Carpa, Trust Officer |

Recordation

On May 25, 1994, the trust declaration was recorded in Maricopa County, Arizona.

Fictitious Business Name Certificate

On October 14, 1994, American Common Trust, Douglas J. Carpa, Trust Officer, filed in Shasta County, California, a Fictitious Business Name Statement for the Trust, whose principal place of business in California was shown as 3041 Lawrence Road, Redding, CA.

Employer Identification Number

By notice dated December 16, 1994, the Internal Revenue Service assigned the trust an employer identification number. That notice states that it is in respect to a telephone call and is addressed to the trust, "Gaynor[,] James G." trustee.

California Employer Account Statement

By statement dated November 27, 1996, the trust received a summary of its account with the Employment Development Department, State of California. The statement is addressed: "James G. Gaynor, Trustee".

Resignation of Douglas J. Carpa

On July 15, 1997, Douglas J. Carpa, as trust officer for American Common Trust, executed a document styled "Trustee Resignation Appointment of Successor-Trustee" (the resignation). The resignation states that Douglas J. Carpa tenders his

resignation on behalf of American Common Trust as trustee for the trust, and that his final act as trustee is to name a successor-trustee: Robert Hogue. The resignation provides that Robert Hogue must tender a letter of acceptance and that said letter of acceptance is "the final act to transfer power". Both Douglas J. Carpa and Robert Hogue signed the resignation, which was notarized in Maricopa County, Arizona.

Douglas J. Carpa also signed a letter addressed to "Trustees" of the trust, stating that he tendered his resignation as trustee effective July 15, 1997. Robert Hogue, as trustee, signed the letter accepting the resignation.

The "First Minutes of the Residential Management Services Trust" (the minutes), dated July 31, 1997, state that Douglas J. Carpa, settlor of the trust, appoints Robert Hogue as legal trustee. Douglas J. Carpa signed the minutes as "Settlor" and Robert Hogue signed as "Legal Trustee".

Trust 1995 Return

For 1995, Michael made a return of Federal income tax for the trust on Form 1041, U.S. Income Tax Return for Estates and Trusts (the trust 1995 return). In the space on that return calling for the signature of a fiduciary or an officer representing a fiduciary, Michael signed his name and added: "Manager". Attached to the trust 1995 return is a Schedule C, Profit or Loss From Business (Sole Proprietorship) (the trust Schedule C). The trust Schedule C refers to a sole

proprietorship, "Westside Residential", whose principal business is shown as "Residential Home Care". The trust Schedule C reports gross receipts of $140,928 and expenses of $161,561, including depreciation of $4,150, for a net loss of $20,633. A schedule of depreciation shows that the trust owned five vehicles, with a "cost/basis" of $25,000 (the depreciable property). The trust also reported interest of $112.

Trust's Operations

From April 7, 1995, until September 10, 1997, the trust maintained a bank account at North Valley Bank, account No. 15-631244 (the trust account). Michael is shown on account documents as "manager" with respect to the trust, and he is listed as a person with signature authority with respect to the trust account. He signed checks drawn on the account during 1995.

Commencement of Respondent's Examinations

Gil Akers is a revenue agent employed by respondent. Mr. Akers was assigned to examine both the trust 1995 return and the Carey 1995 return. He conducted those examinations simultaneously. Mr. Akers's initial contact with Michael in connection with Mr. Akers's examination of the Carey 1995 return was by letter to Michael dated April 28, 1998, to make an appointment to meet and discuss that examination. Mr. Akers's initial contact with a representative of the trust in connection

with Mr. Akers's examination of the trust 1995 return was by letter dated July 1, 1998, to make an appointment to meet and discuss that examination.

OPINION

I.  Burden of Proof

Petitioners claim that respondent bears the burden of proof pursuant to section 7491.  Respondent answers that section 7491 is inapplicable to this case.  We agree with respondent.

In pertinent part, Rule 142(a) provides:  "The burden of proof shall be upon the petitioner, except as otherwise provided by statute".  In certain circumstances, if a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for tax, section 7491 places the burden of proof on respondent.  See sec. 7491(a)(1); Interim Rule 142(a)(2).  Section 7491 is effective with respect to court proceedings arising from examinations commenced after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 685, 726.

Gil Akers is the revenue agent who was assigned to examine both the trust 1995 return and the Carey 1995 return.  During the course of those examinations, he sent letters to Michael, with respect to the Carey 1995 return, and to a representative of the trust, with respect to the trust 1995 return, on April 28 and

July 1, 1998, respectively.  Those are sufficient facts for us to find that examinations of both the trust and the Careys commenced on or before July 22, 1998, and we so find.

Section 7491 has no application to this case.  Petitioners bear the burden of proof.  See Rule 142(a).

II.  Jurisdiction With Respect to Trust

A.  Introduction

Respondent has orally moved to dismiss for lack of jurisdiction with respect to the trust on the ground that no proper person has petitioned this Court on behalf of the trust. Robert Hogue signed the petition filed on behalf of the trust. Mr. Hogue argues that he is a proper person to petition this Court on behalf of the trust.

B.  Rule 60

In pertinent part, Rule 60 provides:

>   (a) Petitioner: (1) Deficiency or Liability Actions:
> A case shall be brought by and in the name of the
> person against whom the Commissioner determined the
> deficiency (in the case of a notice of deficiency) * *
> * or by and with the full descriptive name of the
> fiduciary entitled to institute a case on behalf of
> such person. See Rule 23(a)(1).  A case timely brought
> shall not be dismissed on the ground that it is not
> properly brought on behalf of a party until a
> reasonable time has been allowed after objection for
> ratification by such party of the bringing of the case;
> and such ratification shall have the same effect as if
> the case had been properly brought by such party. * * *

                *    *    *    *    *    *    *

(c) <u>Capacity</u>:  * * * The capacity of a fiduciary or other representative to litigate in the Court shall be determined in accordance with the law of the jurisdiction from which such person's authority is derived.

C.  <u>Mr. Hogue's Burden</u>

Mr. Hogue has the burden of proving that the Court has jurisdiction, see <u>Fehrs v. Commissioner</u>, 65 T.C. 346, 348 (1975); <u>Natl. Comm. to Secure Justice v. Commissioner</u>, 27 T.C. 837, 839 (1957), by establishing affirmatively all facts giving rise to our jurisdiction, see <u>Wheeler's Peachtree Pharmacy, Inc. v. Commissioner</u>, 35 T.C. 177, 180 (1960); <u>Consol. Cos. v. Commissioner</u>, 15 B.T.A. 645, 651 (1929).  In order to meet that burden, Mr. Hogue must provide evidence establishing that he has authority to act on behalf of the trust.  See <u>Natl. Comm. to Secure Justice v. Commissioner</u>, <u>supra</u> at 839-840; <u>Coca-Cola Bottling Co. v. Commissioner</u>, 22 B.T.A. 686, 700 (1931).

D.  <u>Discussion</u>

1.  <u>Introduction</u>

As evidence that he has authority to act on behalf of the trust, Mr. Hogue offers the trust declaration together with documents by which Douglas J. Carpa resigned as trustee and, purportedly, appointed Mr. Hogue his successor.  Mr. Hogue relies specifically on article fourth of the trust declaration, which, in pertinent part, states:  "This agreement and trust created hereby shall be administered, managed, governed and regulated in

all respects according to the applicable statutes of the Uniform Trustees' Powers Act and The Constitution of the United States." Mr. Hogue does not rely on article eighth of the trust declaration, which, in pertinent part, states: "A Successor-Trustee may be appointed by a court of competent jurisdiction or by consensus with the Trust Managers and Beneficiaries if the First Trustee resigns with 30 days notice." Indeed, there is no evidence (and, thus, Mr. Hogue has failed to prove) that he was appointed trustee by a court of competent jurisdiction or by consensus of the trust managers (if any) and the beneficiary.

2. "Uniform Trustees' Powers Act"

On brief, Mr. Hogue provides the following citation and quotation from the "Uniform Trustees' Powers Act":

"Uniform Power Trustee Act, Chapter 479 Of The Revised Statutes, 1989 amended 1992, c.8, s.37; 1994-95, c.19"

APPOINTMENT OF NEW TRUSTEE

16(1) When a trustee, either original or substituted and whether appointed by the Court or a judge or otherwise, is deed [sic], or remains out of [the] Province for more than twelve months, or desires to be discharged from all or any of the trusts or powers reposed in or conferred on him, or refuses, or is unfit to act therein, or is incapable of acting therein, then the person or persons nominated for the purpose of appointing new trustees by the instrument, if any, creating the trust, or if there is no such person, or no such person able and willing to act, then, if the beneficiaries consent thereto in writing, the surviving or continuing trustees or trustee for the time being, or the personal representatives of the last surviving or continuing trustee, may, in writing, appoint another person or * * * [other persons] to be

[a] trustee or trustees in the place of the trustee dead, remaining out of the Province, desiring to be discharged, refusing, or being unfit, or being incapable as aforesaid.

The citation and quotation provided by Mr. Hogue do not correspond to any provision of the Uniform Trustees' Powers Act, 7C U.L.A. 396 (2000). The only apparently relevant provision of the Uniform Trustees' Powers Act is section 4: "The trustee shall not transfer his office to another or delegate the entire administration of the trust to a cotrustee or another." Unif. Trustees' Powers Act sec. 4, 7C U.L.A. 425 (2000). That provision does not help Mr. Hogue. As best we can tell, Mr. Hogue has quoted a provision of the Revised Statutes of Nova Scotia (Canada). See http://www.gov.ns.ca/legi/legc/statutes/trustee1.htm. Mr. Hogue has failed to establish any nexus between the trust and Nova Scotia, and we fail to see the relevance of the quoted provision.

### 3. Failure To Establish Authority

Mr. Hogue's claim of authority to represent the trust rests on his claim that he was validly appointed successor trustee to Mr. Carpa.[3] He has, however, failed to prove that the claimed

---

[3] Although it does not figure into our analysis, the record does not faultlessly support Mr. Hogue's implicit claim that Mr. Carpa, the initial trustee, remained sole trustee until his claimed appointment of Mr. Hogue as his successor. Our findings indicate that, in the interim, another individual, James G. Gaynor, represented himself as trustee.

appointment was valid under the law of any jurisdiction. The cover page of the trust declaration states that the trust document is created under common law right of contract in Washington, D.C., and the trust declaration states that Washington, D.C., is the location of Contract Administrators Trust, the settlor. The trust declaration was recorded in Maricopa County, Arizona, and the trust was administered and operated in California. Mr. Hogue has not specified the jurisdiction from which he believes his authority derives. We have examined the relevant laws of the District of Columbia, Arizona, and California, and, in the absence of his appointment pursuant to the terms of the trust declaration or by a court, we fail to see any basis under the laws of those jurisdictions for his claim that he succeeded Mr. Carpa as trustee of the trust. Since Mr. Hogue has failed to convince us that he was appointed pursuant to the terms of the trust declaration, and there is no evidence that he was appointed by a court, Mr. Hogue has failed to prove that he succeeded Mr. Carpa as trustee and, thus, has the capacity to litigate in this court on behalf of the trust.

E. Conclusion

Respondent's motion to dismiss for lack of jurisdiction with respect to the trust on the ground that no proper person has petitioned the Court on behalf of the trust will be granted.

III. Careys

    A. Deficiency in Tax

        1. Attribution of Trust Income

        a. Introduction

In making its return of income for 1995, the trust reported gross receipts of $140,928 from its business of residential home care and interest income of $112. Among the adjustments giving rise to respondent's determination of a deficiency in tax for the trust for 1995 are an increase in gross receipts of $27,224 and an increase in interest income of $174. On brief, the Careys concede both adjustments. On the basis of the trust 1995 return and those concessions, we find that, for 1995, the trust had gross receipts from the business of residential home care of $168,152 (the trust business gross receipts) and received interest of $286 (the trust interest receipt).

With respect to the Carey 1995 return, respondent has adjusted the gross income shown thereon by adding thereto both the trust business gross receipts and the trust interest receipt.[4] In an attachment to the notice of deficiency issued to

---

[4] On brief, respondent states that, if the Court sustains those adjustments, respondent will concede that those amounts are not gross income to the trust. Since we shall dismiss the trust case for lack of jurisdiction, we need not concern ourselves with that concession.

the Careys for 1995, respondent explains those adjustments as follows:

> It is determined that * * * [the trust] was created and operated for tax avoidance purposes and has no economic substance; therefore, it is disregarded for tax purposes. Alternatively, it is determined that it is a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code; therefore, the income is taxable to you individually. It is determined that the attempted assignment of your income to * * * [the trust] is not recognized for federal income tax purposes and that such income is taxable to you individually.

In their petition, the Careys (then represented by counsel) assign error to respondent's assignment of trust income to them but, in support of that assignment, aver only: "Actual gross income has not been examined and was incorrectly re-constructed." On the basis of their concessions with respect to the trust interest and business gross receipts, we assume that the Careys no longer rely on that averment. On brief, the Careys set forth no proposed findings of fact with respect to respondent's assignment of trust income to them (or with respect to any other adjustment made by respondent). Proposed findings of fact are required by Rule 151(e)(3). With no reference to the transcript, any exhibit, or anything else in the record, they state, simply: "MR. CAREY holds no interest in * * * [the trust]." After disposing of certain legal arguments raised by the Careys, we shall set forth the applicable law and state why we sustain respondent's adjustments assigning trust income to the Careys.

### b. The Careys' Legal Arguments

#### (1) Minimal Evidentiary Foundation

The Careys argue that, since respondent has attributed to Michael gross income not reported by him, respondent must provide a minimal evidentiary foundation, sufficient to connect Michael to some income-producing activity, before respondent may enjoy the presumption of correctness that results from the burden of proof being borne by the Careys. See Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), to which we defer in accordance with the doctrine of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). As stated supra section III.A.1.a., the Careys concede respondent's adjustments to the trust's gross income. Michael signed the trust 1995 return as "Manager", which establishes that he had some control over trust operations. He transferred $8,000 from one of his proprietorship's bank accounts to the trust's bank account and had authority to, and did, write checks on the trust's bank account. He used equipment leased to the trust in at least one of his proprietorships. The record does contain a minimal evidentiary foundation connecting Michael with the income-producing activity that is the source of the unreported income (the trust's operations) that respondent would attribute to Michael.

(2)  Assessment of Tax

The Careys also argue that they cannot be liable for a deficiency in tax because there has been no assessment of tax against them.

The Careys fail to understand that, generally, the determination of a deficiency in tax precedes assessment of the tax.  In pertinent part, section 6212(a) provides that, if the Secretary determines that there is a deficiency in income tax, "he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."  In pertinent part, section 6213(a) then allows the taxpayer 90 days (150 days if the notice is addressed to a person outside the United States) to file a petition in the Tax Court for review of the deficiency. Generally, section 6213(a) prohibits any assessment from being made until either the 90 (or 150) days expires or the decision of the Tax Court becomes final.  That procedure provides an opportunity for a taxpayer to have his or her tax liability redetermined by the Tax Court before an assessment is made.  The Careys' argument is without merit.

c.  Applicable Law

(1)  Fundamental Principles

A fundamental principle of tax law is that income is taxed to the person who earns it.  See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930).

Recently, in <u>Barmes v. Commissioner</u>, T.C. Memo. 2001-155, we applied assignment of income principles to tax the income of a business to a taxpayer who had attempted an anticipatory assignment of that income to a trust.  We had this to say:

> Attempts to subvert * * * [the fundamental principle that income is taxed to the person who earns it] by diverting income away from its true earner to another entity by means of contractual arrangements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes, regardless of whether such arrangements are otherwise valid under State law.  See <u>Vercio v. Commissioner</u>, 73 T.C. 1246, 1253 (1980); see also <u>Schulz v. Commissioner</u>, 686 F.2d 490, 493 (7th Cir. 1982), affg. T.C. Memo. 1980-568.  The "true earner" of income is the person or entity who controlled the earning of such income, rather than the person or entity who received the income.  See <u>Vercio v. Commissioner</u>, <u>supra</u> at 1253 (citing <u>Wesenberg v. Commissioner</u>, 69 T.C. 1005, 1010 (1978)); see also <u>Commissioner v. Sunnen</u>, 333 U.S. at 604 ("The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes.").  [Id.]

Pursuant to a second fundamental principle, we may ignore a transfer in trust as a sham where the transfer has not, in fact, altered any cognizable economic relationship between the putative transferor and the trust property.  See, e.g., <u>Zmuda v. Commissioner</u>, 79 T.C. 714, 719-722 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).  Recently, in <u>Muhich v. Commissioner</u>, T.C. Memo. 1999-192, affd. 238 F.3d 860 (7th Cir. 2001), we listed the following factors to be considered in determining whether a trust lacks economic substance for tax purposes:

(1) Whether the taxpayer's relationship as grantor to the property differed materially before and after the trust's formation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other beneficiaries of the trust; and (4) whether the taxpayer felt bound by any restrictions imposed by the trust itself or by the law of trusts. * * * [Citations omitted.]

### (2) Grantor Trust Provisions

Under specified circumstances, the statutory grantor trust provisions, sections 671-679, treat the grantor of the trust and, sometimes, a third party, as the substantial owner of all or part of the trust. Trust income is taxed to the substantial owner under the rules of section 671. Because the conditions imposed by each of the grantor trust provisions are independent of those imposed by the others, the grantor can avoid taxation only if (1) he does not possess a disqualifying reversionary interest, sec. 673; (2) the trust cannot be revoked by the grantor or a nonadverse party, sec. 676; (3) trust income cannot be distributed to the grantor or the grantor's spouse or be used to pay for insurance on their lives without the consent of an adverse party, sec. 677; (4) specified powers to control beneficial enjoyment of the corpus or income are not vested in the grantor or certain other persons, sec. 674; and (5) certain administrative powers are not exercisable by the grantor or a nonadverse party, sec. 675.

d. <u>Analysis</u>

The Careys bear the burden of proof. They have failed to prove that the trust interest and business gross receipts should not be taxed to them under either the fundamental principles or grantor trust rules described above.

The facts establish Michael's occupation as an occupational therapist and his proprietary ownership of two residential care facilities. The facts also establish the existence of the trust, that it reported in its Federal income tax return both gross receipts from a business involving residential home care and interest, and that Michael had various rights and responsibilities with respect to the trust, including some employment relationship and the authority to write checks on the trust's bank account. No facts establish that anyone other than Michael exercised any control over the operations of the trust. Indeed, Michael signed the trust 1995 return, and the trust's principal place of business was at the address we presume (from the Carey 1995 return) to be Michael's residence. The Careys claim that, during 1995, Douglas J. Carpa, as trust officer of American Common Trust Co., served as trustee of the trust. If so, then, certainly, he is knowledgeable as to who controlled trust operations during 1995. The Careys have failed to show that Mr. Carpa was unavailable to testify at the trial of this case. We think that a fair inference to be drawn from the

Careys' failure to call Mr. Carpa is that his testimony would have been negative to Michael.  See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946) ("the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable"), affd. 162 F.2d 513 (10th Cir. 1947); see also <u>United States v. Tory</u>, 52 F.3d 207, 211 (9th Cir. 1995) (similar).  We, find, therefore, that Michael did control the trust's operations.

We also draw negative inferences from the Careys' failure to identify the beneficiary (or beneficiaries) of Contract Administrators Trust, the claimed settlor of the trust, and the interest (or interests) behind Shasta Enterprises, the claimed beneficiary of the trust.  Mr. Carpa would also seem a likely witness on those issues (as would representatives of Contract Adminstrators Trust and Shasta Enterprises).  We infer from the Careys' failure to call Mr. Carpa or another knowledgeable witness to testify on those issues that any such testimony would have been negative to Michael, i.e., that any witness would have testified that Michael, or Michael and Leone, transferred property to the trust and benefited from it, and we so find.

If Michael had sufficient power and control over the trust's receipt of income, then that income would be taxable to him.  See <u>Barmes v. Commissioner</u>, <u>supra</u>.  The Careys have failed to prove

that Michael retained any less power and control than necessary to tax to him that income. They also have failed to prove that the trust should not be disregarded as a sham, since the transfer in trust lacked economic substance. See the discussion of relevant factors, section III.A.1.c.(1), <u>supra</u>, as set forth in <u>Muhich v. Commissioner</u>, T.C. Memo. 1999-192. Finally, the Careys have failed to prove that one or both of them should not be treated as the owner of all or a portion of the trust on account of application of one or more of the grantor trust rules found in sections 673 through 676.

### e. Conclusion

We sustain so much of respondent's determination of a deficiency in tax as is attributable to his inclusion in the Careys' gross income of the trust interest and business gross receipts.[5]

---

[5] Respondent has attributed to Michael the trust business gross receipts without allowing to the Careys the various offsetting deductions claimed by the trust. We have no occasion to consider whether the Careys are entitled to those deductions because they have not made any claim to them. Moreover, while we assume that some costs were incurred in generating the trust business gross receipts, we have no basis other than the self-serving figures on the trust 1995 return for estimating those costs. A taxpayer must keep sufficient records to substantiate amounts, such as deductions, required to be shown on a return. See sec. 1.6001-1(a), Income Tax Regs. While it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, <u>Cohan v. Commissioner</u>, 39 F.2d 540 (2d Cir. 1930), we must have some basis on which an estimate may be made, <u>Vanicek v.</u>
(continued...)

## 2. Carey Schedule C--Omission of Gross Receipts

Respondent has adjusted the gross receipts shown on the Carey Schedule C by adding thereto $9,886. In their reply brief, the Careys concede that adjustment to the extent of $6,253. They argue that the remaining amount of the adjustment, $3,633, is not taxable to them in 1995 because, although that amount was received by them in 1995, it was not deposited into their bank account until 1996. Michael elected the cash method of accounting to report income from Rancho and Sunshine. Checks are income to a cash method taxpayer in the year of receipt, not in the year of deposit. See Lavery v. Commissioner, 158 F.2d 859 (7th Cir. 1946), affg. 5 T.C. 1283 (1945); Friscia Constr., Inc. v. Commissioner, T.C. Memo. 2000-192. We sustain respondent's adjustment in full.

## 3. Carey Schedule C--Disallowance of Deductions

Respondent has adjusted the net profit shown on the Carey Schedule C by disallowing all of the expenses that the Careys claimed in determining that net profit. Respondent explained his adjustment by stating that the Careys had failed to establish

---

[5](...continued)
Commissioner, 85 T.C. 731, 742-743 (1985); see also Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390. Because the record contains no evidence upon which we could base such an estimate, we could not allow the Careys any deductions even were we to conclude that they had asked us to do so.

that the claimed expenses were paid or incurred during 1995 and that they were ordinary and necessary to Michael's business. Respondent further explained his adjustment disallowing the claimed deduction for Michael's business use of his home on the ground that certain prerequisites to that deduction had not been established.  On brief, respondent concedes (and we agree) that the Careys may deduct the following expenses, on the basis of evidence they presented:

| | |
|---|---|
| Mortgage interest | $8,785 |
| Property rental | 22,200 |
| Supplies | 684 |
| Utilities | 609 |
| Wages | 102,311 |
| Food | 19,377 |
| Medical services | 150 |
| Maintenance/ops | 3,460 |
| Telephone | 315 |
| Total | 157,891 |

Respondent argues that the Careys have failed to prove any additional expenses.  In the main, we agree with respondent.  At the trial of this case, the Court accepted into evidence two exhibits offered by the Careys, together consisting of over 300 pages showing photocopies of checks and other documents relating to Sunshine and Rancho.  In each case, the checks and other documents appear to relate to only a portion of 1995. Particularly with regard to the Rancho checks and documents, much of the data entered thereon is illegible.  The Court instructed the Careys to schedule that data and, on brief, make proposed

findings of fact from which the Court could find that the Careys had proven the expenses claimed on the Carey Schedule C. The Careys failed to propose such findings. We have reviewed the Careys' objections to respondent's proposed findings of fact, which objections incorporate references to the data in the two exhibits (and to other exhibits); and, except in two instances, the Careys have failed to prove that they are entitled to deduct expenses in excess of those conceded by respondent. We believe that they have established rental payments for Sunshine of $10,000 for 1995, not the $9,000 conceded by respondent, and, thus, allow them an additional deduction on account of those payments of $1,000. We also believe that they have established one rental payment of $1,105.75 on account of equipment rented from ARJO Credit Corp. Otherwise, the Careys have failed to carry their burden of proving deductible expenses in excess of those conceded by respondent.

Except with respect to the $157,891 of expenses conceded by respondent and the additional $2,105.75 of expenses allowed by us, we sustain respondent's disallowance of expenses claimed on the Carey Schedule C.

### 4. NOL Carryover

Respondent has disallowed the net operating loss carryover of $11,311 claimed by the Careys on the Carey 1995 return. The Careys have failed to prove any facts showing their entitlement

to that carryover, see sec. 172(a), and we sustain respondent's disallowance.

B.  Section 6662(a) Penalty

Section 6662(a) provides for an accuracy-related penalty (the accuracy-related penalty) in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations (without distinction, negligence), any substantial understatement of income tax, or any substantial valuation misstatement. Section 6664(c)(1) provides that the accuracy-related penalty shall not apply to an underpayment if the taxpayer had reasonable cause for his or her position and acted in good faith. Respondent determined the accuracy-related penalty against the Careys.  Although, in his notice of deficiency to the Careys, respondent states that he bases his imposition of the section 6662(a) accuracy-related penalty upon "1 or more" of the three grounds listed in section 6662(b)(1) through (3), on brief, respondent relies only on his claims that the Careys were negligent or substantially understated their income tax.

On brief, the Careys argue that they should not be subject to the accuracy-related penalty because they relied on the advice of professionals.  They argue as follows:

> The respondent states the Carey's are liable for accuracy related penalty.  The Carey's acted in good faith to comply with all IRS regulation.  Income tax

form 1040 was filed and signed by the Carey's for the year 1995. Mr. Tim Riley from American Tax Service (bookkeeping) was hired to do all bookkeeping for the year 1995. American Tax Professionals was hired to complete the 1040 tax returns based on the information provided by Mr. Riley. The Carey's relied on these professionals to produce accurate tax information. Under [secs.] 6662 and 6664 and applicable regulations, a taxpayers good faith reliance on the advice of (including opinions) of a professional tax advisor will generally be taken in account for purposes of determining whether the taxpayer will be subject to accuracy related penalty.

The Careys bear the burden of proof. To sustain a defense to the accuracy-related penalty based on reliance on professional advice, the Careys must establish, among other things, what advice they relied on and that the advice was based on adequate information provided by them. See, e.g., Daugherty v. Commissioner, 78 T.C. 623, 641 (1982); Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Ciaravella v. Commissioner, T.C. Memo. 1998-31; Stephens v. Commissioner, T.C. Memo. 1997-204. The Careys offered no evidence regarding what information they provided to, or what advice they received from, Tim Riley, American Tax Service, American Tax Professionals, or Linda Billingsley, who signed the return as a paid preparer. The Careys failed to carry their burden of proving that they were not negligent or that they acted in good faith or had reasonable cause for the positions they took on their return. The understatement of income was (and remains) substantial, and we sustain respondent's determination of the accuracy-related

penalty, modified only to take account of the amount of the deficiency that we have determined.

> An order of dismissal for lack of jurisdiction will be entered in docket No. 10400-99. Decision will be entered under Rule 155 in docket No. 10502-99.